[Sac. No. 7865. In Bank. Oct. 15, 1970.]

DONALD A. POLLACK, Petitioner, v.
ROBERT L. HAMM, as Registrar of Voters, etc., et al., Respondents;
ROBERT L. SHAW, Real Party in Interest.

## COUNSEL

Edward L. Lascher for Petitioner.

Thomas C. Lynch, Attorney General, Sanford N. Gruskin and Howard J. Schwab, Deputy Attorneys General, Herbert L. Ashby, County Counsel, and Shannon Trower, Assistant County Counsel, for Respondents.

Robert L. Shaw, in pro. per., for Real Party in Interest.

## OPINION

**THE COURT.**—By this petition for a writ of mandate, petitioner sought to compel respondent Hamm, as Registrar of Voters, to refrain from conducting the June 2, 1970, election or any election during 1970 to fill a vacancy in Office No. 3 of the Superior Court of Ventura County. We declined to prohibit the election but issued an alternative writ directing that the results of the June election not be certified pending final determination of the issues raised by the petition. For reasons that are set forth below we have concluded that a vacancy existed in Office No. 3, that this office was properly subject to election during 1970, and that the alternative writ should therefore be discharged and the petition denied.

The following sequence of events generated the instant dispute as to the proper manner by which to fill the vacancy in Office No. 3.

In December 1969, the Governor appointed Philip J. West to a vacancy existing in Office No. 3 of the Superior Court of Ventura County occasioned by the resignation of the prior incumbent who had accepted an appointment to the Court of Appeal. Pursuant to article VI, section 16, subdivision (c), of the California Constitution,[1] the appointment of Judge West was made to fill that vacancy temporarily until the winner of an election to a full term took office.[2] Also in conformity with article VI, section 16, subdivision (c), respondent Hamm included the office among those subject to election at the next general election after January 1, 1970, i.e., the statewide primary election to be held on June 2, 1970.[3]

The time within which to file a declaration of intention to run for Office No. 3 extended from February 9 through February 18, 1970, and the time for filing nomination papers to qualify as a candidate in the June election extended from February 24 through March 20, 1970.[4] Judge West, who had taken office on January 16, 1970, qualified as a candidate for a full term in Office No. 3. The only other person to qualify as a candidate during the statutory period was the real party in interest in this proceeding, Robert L. Shaw, presently a judge of the municipal court.

On April 11, 1970, after the time within which candidates for the office could qualify to have their names on the ballot in the June primary election, Judge West was lost at sea in a boating accident, and, on May 14, 1970, the Superior Court of Ventura County entered an order, on the petition of Judge West's widow, establishing his death as having occurred on April 11, 1970. In the interim between the disappearance of Judge West and the official determination of his death, the Governor appointed petitioner to fill the vacancy that once again existed in Office No. 3. The appointment was made on April 30, 1970, and petitioner assumed the office on

---

[1]Article VI, section 16, subdivision (c), provides: "Terms of judges of superior courts are 6 years beginning the Monday after January 1 following their election. A vacancy shall be filled by election to a full term at the next general election after the January 1 following the vacancy, but the Governor shall appoint a person to fill the vacancy temporarily until the elected judge's term begins."

[2]Although petitioner states that Judge West was appointed to "complete the term" of the prior incumbent, we do not understand him to contend that the appointee would have been entitled to remain in office beyond January 4, 1971, had the prior incumbent's term not ended on that date which was, coincidentally, the date upon which the winner of an election conducted pursuant to article VI, section 16, subdivision (c), would take office.

[3]"General election" is defined as the election held throughout the state on the first Tuesday after the first Monday of November in each even-numbered year. (Elec. Code, § 23.) The primary election is, however, a general election for nonpartisan judicial offices if a candidate receives a majority of the votes cast for the office. (*Immel* v. *Langley* (1959) 52 Cal.2d 104 [338 P.2d 385].)

[4]Elections Code sections 6499, 25301.

May 8, 1970, thereafter instituting this action seeking to clarify his status and to prohibit any further action toward filling the office by election prior to the next general election after January 1, 1971. We permitted the scheduled election to continue and, at the June 2, 1970, primary election, Judge Shaw received a majority of the votes cast for Office No. 3.

Petitioner assumes that the death of Judge West created a *new* vacancy in Office No. 3, and contends that, properly construed, article VI, section 16, subdivision (c), of the California Constitution precludes any election to fill that office prior to the next general election after January 1 of 1971 inasmuch as the vacancy came into being during 1970. Judge Shaw, on the other hand, contends that no vacancy existed at the time petitioner was appointed and took office, that the appointment was therefore invalid, and that petitioner lacks standing to maintain this action whether or not his appointment is valid. He also contends that the June 2, 1970, primary election was properly conducted in accordance with the provisions of article VI, section 16, subdivision (c), and that, as the recipient of a majority of the votes cast for a nonpartisan office at a valid primary election, he has been duly elected to a full term in Office No. 3.[5] We first examine petitioner's standing to maintain this action.

### Vacancy in a Judicial Office

The parties do not dispute the obvious proposition that a vacancy occurs in a judicial office upon the death of the incumbent. We are called on to determine whether an appointment to fill an apparent vacancy is valid although made prior to the date upon which the death of the incumbent office holder is officially confirmed.

■ In the absence of a dispute making declaratory relief appropriate, no statutory means by which to establish the fact of death is available other than to persons claiming an interest in real or personal property whose title is affected by the death. (Prob. Code, § 1170.) ■ The presumption of death of a missing person not heard from in seven years (Evid. Code, § 667) is manifestly inadequate to guide public officials charged with the responsibility of avoiding the disruption of governmental services by prompt appointments to vacant offices. But where, from the circumstances attending the disappearance of an office holder, it reasonably appears more likely than not that the incumbent is deceased, an official in whom constitutional or statutory authority to appoint a successor reposes need not rely on that presumption for it is not exclusive. It has long been the rule that, where there is evidence of a specific peril, death may be found to have occurred in a shorter period. (*Ashbury v. Sanders* (1857) 8 Cal. 62, 65-66; *Estate*

---

[5]California Constitution, article II, section 2¾; Elections Code section 6613; *DeWoody* v. *Belding* (1930) 210 Cal. 461 [292 P. 265].

*of Kustel* (1884) 2 Cof. 1, 3; *Estate of Luesmann* (1892) 2 Cof. 531, 534.) ■ "Although the general rule is that the presumption of life continues during the entire period of seven years following the disappearance of a person, such presumption may be overcome by evidence showing either that within such time the missing person was subjected to some specific peril, or that other circumstances or conditions intervened sufficient to quicken the ordinary seven-year period of time necessary to create the presumption of death. [Citations.] But in that regard, it is unnecessary that the evidence be direct or positive, but it need only be of such character as to make it more probable that the person died at a particular time than that he survived." (*Estate of Christin* (1933) 128 Cal.App. 625, 630-631 [17 P.2d 1068].)

■ We think it beyond question that the circumstances of Judge West's unfortunate disappearance were such as to make it reasonably appear more probable than not at the time the Governor appointed petitioner that Judge West was deceased. Inasmuch as no challenge to the appointment was made on this or any other ground prior to the time petitioner assumed the office, a judicial determination establishing the fact of death or other official confirmation was unnecessary to the validity of the appointment which became effective when petitioner took the oath of office pursuant to article XX, section 3, of the California Constitution.

Judge Shaw further contends, however, that even if petitioner was validly appointed, he lacks standing to object to the election because his appointment is only to fill the vacancy temporarily until the winner of the election takes office on January 4, 1971. In resolving this question we necessarily reach the merits of petitioner's contention that he was appointed to fill a new vacancy which occurred in 1970 and that he is therefore entitled to hold the office until the winner of an election to be held in 1972 takes office on January 8, 1973.

### Duration of a Gubernatorial Appointee's Tenure

Article VI, section 16, subdivision (c) was adopted by the people in 1966 as part of a scheme of constitutional revision. Its provisions incorporate in substance those of former article VI, section 8. That section read in pertinent part: "The term of office of judges of the superior courts shall be six years from and after the first Monday of January after the first day of January next succeeding their election. A vacancy in such office shall be filled by the election of a judge for a full term at the next general state election after the first day of January next succeeding the accrual of the vacancy; *except that if the term of an incumbent, elective or appointive, is expiring at the close of the year of a general state election and a vacancy*

*accrues after the commencement of that year and prior to the commence-*
*ment of the ensuing term, the election to fill the office for the ensuing full*
*term shall be held in the closing year of the expiring term in the same*
*manner and with the same effect as though such vacancy had not accrued.*
In the event of any vacancy, the Governor shall appoint a person to
hold the vacant office until the commencement of the term of the judge
elected to the office as herein provided." (Italics added.)

When the present article VI, section 16, subdivison (c) was adopted, the
exception encompassed by the italicized sentence was deleted because it
had been held to be operative only during the early part of the year.
(*Barber* v. *Blue* (1966) 65 Cal.2d 185, 188-189 [52 Cal.Rptr. 865,
417 P.2d 401]; Cal. Const. Rev. Com., 1966 Proposed Revision, Com-
ments, p. 94.) In *Barber* v. *Blue, supra,* the last election for the superior
court office in suit had been held in 1964. The incumbent died in Decem-
ber 1965 and a successor had been appointed in January 1966. The
appointee, who was required to seek election in 1966 pursuant to article VI,
section 8, was the only candidate to qualify for the office. He died on
May 8, 1966. Because he had been the only candidate, his name did not
appear on the primary election ballot, but had he survived he could have
been challenged at the general election pursuant to then article VI, section
6, by a write-in petition filed not less than 45 days before the election.
Thus, at the date of the appointee's death he could not be considered elected
to the office.

We held that because in the circumstances there present the full elective
process could not be carried out, the exception, which would have required
any appointee to run for the office in 1966, was not applicable. In so hold-
ing we noted that the section stated the general rule "that an appointee
does not stand [for] election in the year of the accrual of the vacancy which
he is appointed to fill." (65 Cal.2d 185, 187.) It was there argued that
since the first appointee would have had to stand for election in 1966 .
(having been appointed to a vacancy accruing in 1965), his term was
expiring in 1966 and thus the second appointee was required to stand for
election in that year also. We rejected that argument, concluding that
the Legislature had used the word "term" to refer to the normal six-year
term and had created the exception "to insure that an election will be
held every six years even when the vacancy in the sixth year is caused by the
death or resignation of an appointee." (*Id.,* at p. 191.)

Petitioner here argues that *Barber* v. *Blue* governs the present contro-
versy. His reliance is misplaced. In *Barber* we did not consider whether
the appointees were filling the same vacancy or if a new vacancy occurred
on the death of the first appointee. We decided only that the "term" which

the second appointee was filling was that of the original incumbent and since that term did not expire in the year of the second appointee's appointment, the exception was not applicable to him. Nor, since the deceased candidate there had been unopposed, did we have before us in *Barber* a situation in which the full elective process could be carried out.

The governing constitutional provision has now been amended to eliminate the troublesome exception considered in *Barber* v. *Blue.* The requirement that there be an opportunity for an election to superior court offices every six years has been retained, however. Moreover, had there been no amendment, *Barber* v. *Blue* would require an election if possible since the six-year term of the elected incumbent of Office No. 3 would have expired at the end of 1970. To postpone the scheduled election would have been contrary to the intent and purpose of the Constitution, recognized in *Barber,* that whenever it is possible to carry out the full elective process no more than six years shall elapse between elections for a superior court office.

■ The 1966 amendments to the Constitution not only deleted the exception requiring an election in the year a vacancy occurred, but also modified the wording of the provision to eliminate any ambiguity as to the tenure of an appointee. Article VI, section 16, subdivision (c), now provides, inter alia: "A vacancy shall be filled by election to a full term at the next general election after the January 1 following the vacancy, but the *Governor shall appoint a person to fill the vacancy temporarily until the elected judge's term begins.*" (Italics added.)

The amendment does, as petitioner notes, eliminate the requirement that there be an election to fill a vacancy during the year that the vacancy occurs, but it does not follow that no election may be held in 1970 for the office now held by petitioner. Petitioner's argument is founded on his assumption that the rule was for the benefit of the appointee and that no election may be held during the year in which *any* successor to the original incumbent is appointed. In order to reach this conclusion it is necessary to find that a new vacancy occurs in a superior court office each time an appointee dies, resigns, or otherwise vacates his office. We do not so construe article VI, section 16, subdivision (c).

■ A vacancy occurs in a superior court office when an elected incumbent dies. ■ Pursuant to article VI, section 16, subdivision (c), the Governor's appointee shall "fill the vacancy temporarily until the elected judge's term begins." This language suggests that the vacancy continues to exist until the commencement of the elected judge's term although it may be temporarily filled. Therefore, if an appointee leaves the office it is the original vacancy to which the Governor may appoint

another temporary incumbent. No new vacancy is created by the departure of an appointee. Were we to adopt petitioner's construction of article VI, section 16, subdivision (c), and hold that a new vacancy occurs each time an appointee vacates the office, it would be possible, through the device of appropriately timed resignations, to preclude any election to an office. This would be contrary to the intent of the constitutional provision that a superior court term be six years, a provision which contemplates that an opportunity to pass on the qualifications of superior court judges will be available to the electorate no less often than every six years. Since the language of article VI, section 16, subdivision (c), does not compel the result suggested by petitioner, we are governed by the well established rules that constitutional and statutory provisions be construed consistently with the intent of the adopting body and in such manner as not to produce unreasonable results. (*West Pico Furniture Co.* v. *Pacific Finance Loans* (1970) 2 Cal.3d 594, 607 [86 Cal.Rptr. 793, 469 P.2d 665]; *Barber* v. *Blue, supra,* 65 Cal.2d 185, 188; *Select Base Materials, Inc.* v. *Board of Equalization* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *Aggeler* v. *Dominguez* (1933) 217 Cal. 429 [19 P.2d 241].)

█ In holding that the "vacancy" referred to in article VI, section 16, subdivision (c), is one which arises upon the death or surrender of the office by an elected incumbent and exists until the accession to office of an elected successor, although the office may be temporarily filled by a succession of appointees, we insure that the only circumstances in which an election may be postponed beyond the sixth year of the elected incumbent's term will be those in which it is impossible to carry out the full elective process. Thus, only if the vacancy arises in the year of expiration of the elected incumbent's term,[6] or in the unlikely event that the situation presented in *Barber* v. *Blue, supra,* should recur and an unopposed incumbent die in an election year at a time when it is no longer possible to carry out that process, may more than six years elapse between elections or opportunity for election for the office.

Here no basis for postponing the electorate's opportunity to express its wishes exists. The vacancy arose in 1969 and the full elective process has been carried out. █ The incumbent appointee has not had opportunity to run for the office as an incumbent, but he has no statutory or constitu-

---

[6]For the purposes of article VI, section 16, subdivision (c), a term "expires" at the end of the year before which an elected successor is to take office. (*Barber* v. *Blue, supra,* 65 Cal.2d 185, 187, fn. 2.) Thus, although the elected successor does not take office until the first Monday after January 1 of the year following the election, for convenience his predecessor's term is said to expire in the election year. The term of the elected incumbent of Office No. 3 is therefore said to expire in 1970 although the new term does not commence until January 4, 1971.

tional right to do so. The election has not been precipitate, nor is there reason to believe the electorate was uninformed. ■ Concededly the choice was between only two candidates, one of whom was deceased at the date of the election, but this did not preclude rejection of the remaining candidate by the electorate had he been deemed unqualified. Had Judge Shaw failed to receive a majority of the votes cast[7] for Office No. 3, no one would have been elected and the incumbent appointee would have continued to fill the vacancy until another regular election could be held.[8] (See *Barber* v. *Blue, supra,* 65 Cal.2d 185, 190; *French* v. *Jordan* (1946) 28 Cal.2d 765 [172 P.2d 46].) Thus, the full elective process was not only possible, but was in fact accomplished.

For the reasons explained herein we conclude that petitioner is not entitled to the relief sought. Respondent Hamm is directed to certify the results of the June 2, 1970, election for Office No. 3 to the Secretary of State who shall issue his certificate of election in accordance therewith. The alternative writ of mandate is discharged and the petition denied. This decision is final forthwith.

---

[7]Respondent Hamm, Ventura County Registrar of Voters, has certified to this court the results of the election of June 2, 1970, establishing that Judge Shaw received 41,016 votes while Judge West received 26,285 votes.

[8]Although petitioner suggests that a write-in candidacy is possible, the only authority for such candidacy for a superior court office is now that of Elections Code section 25304 which is limited to situations in which an incumbent is unopposed.