[S.F. No. 22769. In Bank. Jan. 27, 1971.]

COUNTY OF SAN MATEO, Plaintiff and Respondent, v. LAWRENCE BOSS, Defendant and Appellant.

## COUNSEL

Dinkelspiel & Dinkelspiel and Alan A. Dougherty for Defendant and Appellant.

Barbara B. Rintala, Alan F. Charles, Barry A. Herzog, Terry J. Hatter, Jr., and Paul L. McKaskle as Amici Curiae on behalf of Defendant and Appellant.

Keith C. Sorenson, District Attorney, and Carolee Houser, Deputy District Attorney, for Plaintiff and Respondent.

Thomas C. Lynch, Attorney General, Elizabeth Palmer and Jay S. Linderman, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

SULLIVAN, J.—In this case we are called upon to determine whether an adult child of a recipient of aid to the aged under the Old Age Security Law (Welf. & Inst. Code, div. 9, pt. 1, ch. 3, § 12000 et seq.)[1] may constitutionally be required to reimburse the state.

Plaintiff County of San Mateo (County) brought this action pursuant to sections 12100 and 12101 to collect from defendant accrued but unpaid monthly contributions of $20 each toward the support of his mother and to obtain an order requiring defendant to make such monthly contributions in the future. The case was tried without a jury upon a written stipulation of facts and without the introduction of any oral or documentary evidence. Judgment was rendered in favor of the County, and defendant appeals.

---

[1] Hereafter, unless otherwise indicated, all section references are to the Welfare and Institutions Code.

Defendant is the adult son of Johanna Boss who since February 1965 has received $116.90 per month from the County under provisions of the Old Age Security Law. Mrs. Boss is 66 years old and unable to work; she has no income except the payments of aid to the aged and monthly payments of social security in the sum of $64.60. She owns her own home, which is valued at $31,800, but no other real or personal property of substantial value.

On February 25, 1965 the San Mateo County Department of Public Health and Welfare determined pursuant to section 12101 that defendant was able to and should contribute $20 per month to the support of his mother. At that time defendant was earning $755 per month as a tool room mechanic supervisor; at the time of trial he was earning $800.80 per month as a leadingman tool room mechanic. No other person was dependent on his income.

Defendant refused to contribute to his mother's support in the amount determined by the department of public health and welfare. The County thereupon commenced the instant action.

The trial court found that the facts contained in the written stipulation of the parties were true and adopted the stipulation as its findings of fact. The court concluded that defendant was legally obligated to support his mother under sections 12100 and 12101 and that the County was entitled to judgment in the sum of $820 plus costs of suit. Judgment was entered awarding the County this sum and ordering defendant to make future monthly contributions of $20 or such other sum as should be determined by the County pursuant to section 12101.

The Old Age Security Law provides for the extension of public assistance to needy aged persons. The program is voluntary and is pursued with the stated intent "that employment and self-maintenance of aged persons shall be encouraged whenever feasible." (§ 12001.) Under said law assistance is given to those persons who have attained the age of 65 years and meet certain other statutory requirements. (See § 12050.) One such requirement is that the recipient of aid "is not receiving adequate support from a husband or wife, or child able and responsible under the laws of this state to furnish such support. . . ." (§ 12050, subd. (d).)

The Old Age Security Law also provides that the adult children of a recipient of aid to the aged shall be required to contribute to the recipient's support to the extent of the child's ability. Section 12101 provides: "The ability of an adult child to contribute to the support of a parent shall be determined in accordance with this section. [Par.] The maximum monthly amount an adult child shall be required to contribute

toward the support of a parent in receipt of aid under this chapter shall not exceed the amount specified by the Relatives' Contribution Scale [which is set forth later in the section].[2] Regulations of the department shall prescribe the criteria, methods of investigation and test check procedures relating to the determination of the maximum amount any adult child may be held liable to contribute toward the support of a parent to the end that the required contribution does not impose an undue hardship upon the adult child and administrative time and effort are not expended on nonproductive activities. . . ."

Section 12100 which provides for enforcement of the duty of support created by section 12101, states: "If an adult child living in this state fails to contribute to the support of his parent as required by Section 12101, the county granting aid under this chapter may proceed against such child. Upon request to do so, the district attorney or other civil legal officer of the county may maintain an action in the superior court of the county granting such aid, to recover that portion of the aid granted as it is determined that the child is liable to pay, and to secure an order requiring payment of any sums which may become due in the future. [Par.] The granting of or continued receipt of aid shall not be held to be contingent upon any court action or order or the child's compliance with provisions of Section 12101. . . ."

The provisions which are now contained in sections 12100 and 12101[3] have been enforced against the adult children of recipients of old age security aid. (*County of Los Angeles* v. *La Fuente* (1942) 20 Cal.2d 870 [129 P.2d 378], cert. den. (1942) 317 U.S. 698 [87 L.Ed. 558, 63 S.Ct. 441], petitions for rehearing denied (1943) 318 U.S. 798, 800, 802 [87 L.Ed. 1162, 1164, 1166, 63 S.Ct. 558], 319 U.S. 779, 783 [87 L.Ed. 1724, 1727, 63 S.Ct. 1026]; *County of Alameda* v. *Aberle* (1968) 268 Cal. App.2d 424 [73 Cal.Rptr. 926]; *County of Los Angeles* v. *Kasparian* (1959) 168 Cal.App.2d 537 [336 P.2d 34]; *County of Los Angeles* v. *Lane* (1952) 113 Cal.App.2d 476 [248 P.2d 479]; *Kelley* v. *State Board of Social Welfare* (1947) 82 Cal.App.2d 627 [186 P.2d 429]; *Garcia* v. *Superior Court* (1941) 45 Cal.App.2d 31 [113 P.2d 470]; *County of Los Angeles* v. *Hurlbut* (1941) 44 Cal.App.2d 88 [111 P.2d 963]; *County of Lake* v. *Forbes* (1941) 42 Cal.App.2d 744 [109 P.2d 972].)

---

[2]The Relatives' Contribution Scale sets forth the maximum contributions to be required of an adult child as a function of the income of the child and of the number of persons dependent upon the child's income. For example, for a child earning between $751 and $800 per month, the maximum required contribution is $40 per month if there is one person dependent on such income, but $20 per month if there are two persons dependent on such income.

[3]Provisions similar to those now found in sections 12100 and 12101 were found prior to September 17, 1965, in former sections 2224 and 2181, respectively.

Defendant, however, contends that under the principles announced in *Department of Mental Hygiene* v. *Kirchner* (1964) 60 Cal.2d 716 [36 Cal.Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 353], certiorari granted (1964) 379 U.S. 811 [13 L.Ed.2d 26, 85 S.Ct. 39], remanded for further proceedings (1965) 380 U.S. 194 [13 L.Ed.2d 753, 85 S.Ct. 871], and reiterated solely on state grounds (1965) 62 Cal.2d 586 [43 Cal.Rptr. 329, 400 P.2d 321, 20 A.L.R.3d 361], the imposition of liability upon him pursuant to sections 12100 and 12101 is unconstitutional.

In *Kirchner* we held it to be a denial of equal protection of the laws to require an adult child to reimburse the state for the care, support and maintenance of his mentally ill parent in a state institution. We declared that " 'providing for sequestration and treatment, of persons in approprite state institutions—subject of course, to the constitutional guaranties —who would endanger themselves or others if at large is a proper state function; being so, it follows that the expense of providing, operating and maintaining such institutions should (subject to reasonable exceptions *against the inmate or his estate*) be borne by the state.' . . . [T]he cost of maintaining the state institution, including provision of adequate care for its inmates, cannot be arbitrarily charged to one class in society; such assessment violates the equal protection clause." (Original italics.) (60 Cal.2d at pp. 719-720.) We further noted that neither family relationship nor presence or absence of wealth were adequate or rational bases for sustaining a classification. (*Id.* at p. 721.)

However, we did recognize in *Kirchner* that the costs of such care could, consistently with equal protection, be charged to those persons who had a preexisting duty to support the recipient of the care. (*Id.* at p. 719.) In a line of decisions since *Kirchner* imposition of liability upon the estate of the recipient of welfare,[4] upon the recipient's spouse,[5] and, where the recipient was a minor, upon his parents,[6] has been upheld as consti-

---

[4]*Estate of Preston* (1966) 243 Cal.App.2d 803 [52 Cal.Rptr. 790] (liability imposed on estate of insane minor for his care in a mental institution); *Guardianship of Hicks* (1964) 228 Cal.App.2d 629 [39 Cal.Rptr. 698] (same).

[5]*Department of Mental Hygiene* v. *Kolts* (1966) 247 Cal.App.2d 154 [55 Cal.Rptr. 437] (liability imposed on spouse of person civilly committed to mental institution); *Department of Mental Hygiene* v. *O'Connor* (1966) 246 Cal.App.2d 24 [54 Cal.Rptr. 432] (same).

[6]*In re Rickey H.* (1970) 2 Cal.3d 513 [86 Cal.Rptr. 76, 468 P.2d 204] (liability imposed on parents to reimburse county for supplying minor with court-appointed counsel); *In re Shaieb* (1967) 250 Cal.App.2d 553 [58 Cal.Rptr. 631] (liability imposed on parents for support of minor during hearing of petition of wardship and while minor was ward of the court and was committed to the California Youth Authority); *County of Alameda* v. *Espinoza* (1966) 243 Cal.App.2d 534 [52 Cal. Rptr. 480] (liability imposed on parents of minor made ward of the court and committed to the Alameda County Boys' Camp); *In re Dudley* (1966) 239 Cal.App.2d

tutional. In each of these cases, it was found that the person upon whom liability was imposed owed a preexisting duty of support to the recipient of the public assistance. Since the state discharges that duty of support to the extent it provides welfare assistance, it may reasonably seek reimbursement from those whose duty it discharges. Such a preexisting duty of support provides a rational ground for classification of those who must bear a disproportionate amount of the costs of the welfare program.

In the case at bench we deal with provisions of the Old Age Security Law rather than with the particular statute involved in the *Kirchner* case which purported to impose liability upon specified relatives for the care and maintenance of patients in state hospitals. (Former § 6650, now § 7275.) Nevertheless, we think the principles enunciated in *Kirchner* clearly apply to the instant case. (tenBroek, *California's Dual System of Family Law: Its Origin, Development, and Present Status, Part III* (1965), 17 Stan.L.Rev. 614, 638-639.) As in *Kirchner* the granting of aid to the aged serves a public purpose and is a proper state function. In *County of Los Angeles* v. *La Fuente, supra,* 20 Cal.2d 870, 876-878, we upheld the Old Age Security Law against the contention that the granting of aid thereunder was a gift of public funds in violation of provisions now found in section 25 of article XIII (formerly § 31 of art. IV) of the California Constitution. We held that "[t]he care and relief of aged persons who are in need clearly may be a special matter of state concern in promoting the public health and welfare, and, for the reasons stated, the Legislature in enacting the Old Age Security Law, based upon a broad social policy, has not made a gift of public money within the constitutional prohibition." (*Id.* at p. 877.) ■ Since the extension of aid under the provisions of the Old Age Security Law is for broad social purposes and for promoting the public health and welfare, it is a valid state function, the expenses of which must be borne by the state. The state may not arbitrarily select one class of persons to bear a disproportionately large part of those expenses.

The County admits that granting aid to the aged is a proper state function but contends that the rationale of *Kirchner* does not apply to this case because such aid primarily benefits the individual recipient rather than society at large. This argument flies in the face of the explicit recognition in *Kirchner* that the care and maintenance of the mentally ill involved in that case promoted both the societal benefit of "the protection of

401 [48 Cal.Rptr. 790] (liability imposed on parent of minor voluntarily committed to state institution as one mentally retarded or deficient); *County of Alameda* v. *Kaiser* (1965) 238 Cal.App.2d 815 [48 Cal.Rptr. 343] (liability imposed on parent of emancipated minor treated at a county hospital for physical injuries received in automobile accident).

society from the confined person" and the private benefit of the confined person's "own protection and possible reclamation as a productive member of the body politic." (*Department of Mental Hygiene* v. *Kirchner, supra,* 60 Cal.2d 716, 720.) Moreover, acceptance of the County's argument would force us in each case to attempt the impossible task of determining which of the many beneficial results of a program of public assistance is of foremost importance. We see no reason to venture into such a morass.

The effect of imposition of liability under sections 12100 and 12101 is to charge the adult children of recipients of aid to the aged with a disproportionate share of the costs of providing for such aid. Therefore, the imposition of liability under those sections is constitutional only to the extent that there is a rational basis supporting the classification thereby established.

The County argues that there is such a rational basis in this case because defendant Boss had a preexisting duty to support his mother (see discussion at fns. 4, 5 and 6, *ante*). It contends that section 206 of the Civil Code[7] creates a preexisting duty on the part of adult children to support their needy parents. Under the principles discussed above, such a preexisting duty of support would provide a rational basis for the imposition of liability under sections 12100 and 12101.

The County's argument, however, must fail because in this case Boss had no duty under Civil Code section 206 to support his mother.

We have had occasion before to note that the liability created by sections 12100 and 12101 is independent of that created by Civil Code section 206. "On this subject it is said in *County of Contra Costa* v. *Lasky* (1954) *supra,* 43 Cal.2d 506, 509 [275 P.2d 452], 'There is a conflict in the cases as to whether the basic liability of responsible relatives is section 206 of the Civil Code or the provisions of the Welfare and Institutions Code. It has been held that the latter code provisions are complete in themselves and the liability of responsible relatives to the county is thereby established. (*County of Lake* v. *Forbes* (1941) 42 Cal.App.2d 744 [109 P.2d 972]; *County of Los Angeles* v. *Lane* (1952) 113 Cal. App.2d 476 [248 P.2d 479]; *County of Los Angeles* v. *La Fuente* (1942) 20 Cal.2d 870 [129 P.2d 378].) Seemingly to the contrary are *Garcia* v. *Superior Court* (1941) 45 Cal.App.2d 31 [113 P.2d 470], and *Kelley* v. *State Board of Social Welfare* (1947) 82 Cal.App.2d 627 [186 P.2d

---

[7]Civil Code section 206 provides: "It is the duty of the father, the mother, and the children of any poor person who is unable to maintain himself by work, to maintain such person to the extent of their ability. The promise of an adult child to pay for necessities previously furnished to such parent is binding."

429]. Although it is not important in this case, we believe the matter is adequately covered by the Welfare and Institutions Code and it is the measure of the extent of the responsible relative's liability to the county. It is to it we must look to ascertain whether the relative is required, in a particular case, to reimburse the county.' We reiterate the declaration of the last quoted sentence as a holding, and any inconsistent implications in the *Garcia* and the *Kelley* cases are disapproved." (Fn. omitted.) (*County of San Bernardino* v. *Simmons* (1956) 46 Cal.2d 394, 398-399 [296 P.2d 329].)

■ Furthermore, it is clear that a person can qualify to receive aid to the aged and yet not be so destitute that his children will owe him a duty of support under Civil Code section 206. "The county is required by the Welfare and Institutions Code to pay aid to the aged who are 'in need' (Welf. & Inst. Code, §§ 2001, 2022 [cf. current § 12050]). The sections which set out the amount of aid allowed and the resources which an aged person may own without being disqualified from receiving aid, delineate the financial situation of one who is considered 'in need.' Manifestly, this is not the same as being 'poor' and 'unable to maintain himself by work' (Civ. Code, § 206). The county is required to pay old age security to persons who, although they are 'in need' according to the Welfare and Institutions Code, have considerable income and property, and who may be able to maintain themselves by work." (Fns. omitted.) (*County of San Bernardino* v. *Simmons, supra,* 46 Cal.2d 394, 400.) A person may qualify for aid to the aged and yet own real or personal property worth $1,200 (§ 11154) and real property of an assessed valuation as high as $5,000 (§ 11153). The recipient of such aid may own future interests, personal effects and jewelry, a motor vehicle, home furnishings, and household equipment and provisions of unlimited value (§ 11154). (*County of San Bernardino* v. *Simmons, supra,* 46 Cal.2d 394, 400, fn. 6.) Furthermore, "[a]n applicant or recipient may retain personal or real property owned by him, or in combination with any other person, without reference to its value, if it serves to provide the applicant or recipient with a home." (§ 11152.)

■ It is obvious from the foregoing that one may be "in need" and thus eligible to receive aid to the aged and yet not be a "poor person who is unable to maintain himself by work" for purposes of Civil Code section 206. Such is the case here; Johanna Boss was qualified to, and did, receive such aid; yet she is not a "poor person who is unable to maintain [her]self by work" within the meaning of Civil Code section 206. Ownership of a $31,800 house does not disqualify her from receiving public assistance (§ 11152), but a person with an estate of that magnitude can-

not be said to be a "poor person." Since Mrs. Boss is not a "poor person," defendant, her son, owed her no duty of support under Civil Code section 206. ██ As we noted in *Department of Mental Hygiene* v. *Kirchner, supra,* 60 Cal.2d 716, 718, fn. 4, "At common law there was no liability on a child to support parents, or on parents to support an adult child." ██ Therefore, defendant owes his mother neither a statutory nor a common law duty of support. Accordingly, there exists no rational basis to sustain the inclusion of defendant within a class which bears a disproportionately large burden of defraying the costs of the old age security aid program. As applied to defendant, the imposition of liability pursuant to sections 12100 and 12101 constitutes a denial of equal protection of the laws.

██ We do not hold, however, that the imposition of liability pursuant to sections 12100 and 12101 is in all instances a denial of equal protection. What we here say is that at least where the adult child owes the recipient of welfare assistance no duty of support under Civil Code section 206, the state may not, consistent with equal protection, charge the adult child with an unequally large portion of the costs of providing such welfare assistance.[8]

██ Defendant makes the additional argument that sections 12100 and 12101 violate the principles enunciated in *Kirchner* because they impose liability upon the adult children of a recipient of aid to the aged without affording the children any right of recoupment against the recipient's estate. This contention is based on the following language from

---

[8]We express no opinion as to whether the duty of support created by Civil Code section 206 provides a sufficient basis for rational classification of those who are required to pay a larger portion of the expense of providing welfare assistance. We note the indication in *Department of Mental Hygiene* v. *Bank of America* (1970) 3 Cal.App.3d 949, 954 [83 Cal.Rptr. 559] that "[u]nder the reasoning of *Kirchner* emphasizing that it is the general public responsibility alone to maintain adult relatives, other than spouses, in mental institutions, Civil Code section 206, as applied to the instant case [involving imposition of liability upon the estate of the father of an adult child committed to a mental institution], is subject to the same constitutional infirmity as is Welfare and Institutions Code section 6650." We also note that in his excellent discussion of the development of the California family law, Professor tenBroek establishes that Civil Code section 206 as well as the various provisions of the Welfare and Institutions Code which impose liability on relatives are derived from the Elizabethan Poor Law (43 Eliz. I, ch. 2 (1601)) and that all of these provisions were developed to relieve the public treasury of part of the burden cast upon it by the public assumption of responsibility to maintain the destitute. (tenBroek, *California's Dual System of Family Law: Its Origin, Development, and Present Status, Part I,* (1964) 16 Stan.L.Rev. 257, 308-313, *Part II,* (1964) 16 Stan.L.Rev. 901, 906-907; see also *Department of Mental Hygiene* v. *Kirchner, supra,* 60 Cal.2d 716, 718, fn. 4.) However, as we find that appellant owes no duty to support his mother under Civil Code section 206, we need not and do not reach the question of the effect of the duty imposed by that section.

*Kirchner:* "Section 6650 by its terms imposes absolute liability upon, and does not even purport to vest in, the servient relatives any right of control over, or to recoup from, the assets of the patient. A statute obviously violates the equal protection clause if it selects one particular class of persons for a species of taxation and no rational basis supports such classification." (60 Cal.2d at p. 722.) However, the quoted language occurs in the context of a discussion of the "expanded recognition of the *parens patriae* principle" (*id.*), which the court found to require a reexamination of the reasons given for imposition of liability on responsible relatives. On the basis of that reexamination, the court in *Kirchner* held, as we have discussed above, that there was no rational basis for such imposition of liability on responsible relatives. This court noted the incongruity of imposing absolute liability upon relatives without also affording them a right of recoupment, while carefully guarding the recipient's estate. That incongruity provided additional cause to scrutinize the rationality of the classification of responsible relatives, but it was not a separate basis for holding the classification unconstitutional. Whether or not the state provided for recoupment, the classification of responsible relatives lacked a rational basis. Thus, the absence of recoupment provisions in this case is irrelevant to the basic task of determining whether the classification of adult children is a rational one.

The judgment is reversed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.