[Civ. No. 24057. Third Dist., Mar. 23, 1987.]

LISA Y. CHUN, an Incompetent Person, etc., Plaintiff and Respondent,
v.
RICHARD B. D. CHUN, Defendant and Appellant.

COUNSEL

Rader, Rader, Goulart & MacKay and Richard H. Gray for Defendant and Appellant.

William E. Sherwood for Plaintiff and Respondent.

OPINION

RYAN, J.*—Defendant appeals from a judgment in which the trial court ordered him to pay his 20-year-old daughter Lisa $1,050 each month as her support, pursuant to Civil Code section 206.[1] (Hereinafter, all unspecified statutory references are to sections of the Civil Code.) Defendant challenges the order, principally asserting that section 206 does not entitle Lisa to support from him. So far as relevant here, that section provides: "It is the duty of the father, the mother, and the children of any person in need who is unable to maintain himself by work, to maintain such person to the extent of their ability."

Plaintiff Lisa Chun is the natural daughter of Mrs. Catherine Chun and

---

*Assigned by the Chairperson of the Judicial Council.

[1] The action was brought on Lisa's behalf by her mother acting as guardian ad litem.

defendant, Dr. Richard B. D. Chun, whose marriage was dissolved in 1973. While she is not mentally retarded, Lisa is an emotionally disabled adult, with approximately the emotional maturity of a 12-year-old child. She attends school regularly, performing at a fifth to seventh grade level. Although at present Lisa is unable to hold a normal job, it is the opinion of her treating psychologist that someday she could work in a sheltered workshop under close supervision. Currently, Lisa serves part time as an unpaid "trainee" child care helper at her school.

Since reaching the age of 18 on March 22, 1981, Lisa has been supported exclusively by Mrs. Chun, with whom Lisa, her 16-year-old brother David, and her 18-year-old sister Nancy share the family residence. Mrs. Chun pledges to continue supporting Lisa insofar as she remains financially able to do so. She is not employed outside the home, holding to the belief that Lisa and her other children require her attention there. Her gross monthly income of approximately $3,500 derives from a variety of sources, including child support for David and spousal support, both from Dr. Chun, as well as interest and dividends from investments. Dr. Chun, who Mrs. Chun testified is a "millionaire" earning more than $100,000 per year in a medical practice, did not testify, but stipulated that he is "able to contribute to support [for Lisa]."

In his answer to plaintiff's complaint, defendant denied any obligation to support Lisa under section 206. In addition, he filed a cross-complaint alleging in relevant part that if the court found him liable for Lisa's support, Mrs. Chun owed a like duty. Mrs. Chun denied the allegations of the cross-complaint and the trial court sustained her position, ruling "that Lisa has reasonable monthly maintenance expenses of $1,050.00, and that [defendant Richard Chun] shall pay the entire amount of such expenses, in the amount of $1,050.00 per month."

Defendant's principal contention is that he owes Lisa no duty of support because she is not a "person in need," within the meaning of section 206. He bases this assertion on the fact that Lisa's needs presently are, and for the foreseeable future can be, satisfied by her mother's support.

Defendant relies primarily on *Duffy* v. *Yordi* (1906) 149 Cal. 140, which involved an action by a mother, then being supported by two of her adult children, against a third adult child who apparently refused to support her. In reversing the trial court's judgment ordering the defendant to pay his mother monthly support pursuant to section 206, the Supreme Court noted "that plaintiff, being supported by her other children, and there being no threat of a withdrawal of such support, is in no condition to demand support from defendant. She is demanding from defendant what she is already

receiving from another. . . . A mother being supported by one child cannot maintain an action against another child for another support."[2] (*Id.,* at p. 143.)

A review of the history of the Legislature's most recent amendment of section 206 makes it abundantly clear that *Duffy* is not controlling on the meaning of the section's current language "person in need." At the time *Duffy* was decided, section 206 provided in relevant part: "It is the duty of the father, the mother, and the children of any poor person who is unable to maintain himself by work, to maintain such person to the extent of their ability. . . ." In 1971, the section was amended to replace the words "poor person" with "person in need." It does not appear that the amendment, passed as part of Senate Bill No. 796, amounted simply to *pro forma* substitution by the Legislature of the enlightened term "person in need" in place of the former, and arguably more vulgar, reference to "poor" persons. Rather, the evident purpose of this amendment was to abrogate a portion of the Supreme Court's decision in *County of San Mateo* v. *Boss* (1971) 3 Cal.3d 962 [92 Cal.Rptr. 294, 479 P.2d 654], wherein it was held "that one may be 'in need' and thus eligible to receive aid to the aged and yet not be a 'poor person who is unable to maintain himself by work' for purposes of Civil Code section 206." (At p. 970; see Sen. Health & Welfare Com. Staff Analysis of Sen. Bill No. 796 (June 9, 1971) p. 5.) The staff analysis for the Senate Health and Welfare Committee stated in part that "[Senate Bill] 796 would amend the Civil Code to require that a relative's contribution be made to any person 'in need'. This would, by definition, include all persons receiving Old Age Security benefits."[3] At the very least, this statement supports a reading, contrary to *Duffy*, that a person who is receiving financial support from one source may nevertheless be "in need" and entitled to the support mandated by section 206. Hence, the *Duffy* case is not persuasive authority on the principal question raised by defendant in this appeal.

The statutory construction of the phrase "person in need" proposed by defendant begs the crucial question whether section 206 imposes on him some obligation to support Lisa. We believe the answer to this question is in the affirmative. ▮ The cardinal principle of statutory construction is that in determining the meaning of language employed in a particular provi-

---

[2]Subsequent decisions, in particular *Gluckman* v. *Gaines* (1968) 266 Cal.App.2d 52 [71 Cal.Rptr. 795], acknowledged that *Duffy* represented an early interpretation of the section, noting that "section 206 has more recently been construed to require several children to support the parent in proportion to their abilities to do so respectively. [Citation.]" (*Id.,* at p. 54.)

[3]In addition to the above-noted change in the statutory language, the following sentence was added to section 206 in 1971 so as to make plain the Legislature's disapproval of *Boss*: "A person who is receiving aid to the aged shall be deemed to be a person in need who is unable to maintain himself by work."

sion the court should, if semantically permissible, effectuate the purpose of the statute. (*People* v. *Craft* (1986) 41 Cal.3d 554, 559 [224 Cal.Rptr. 626, 715 P.2d 585]; *Bravo* v. *Cabell* (1974) 11 Cal.3d 834, 838 [114 Cal.Rptr. 618, 523 P.2d 658].) ■ The purpose of section 206 is to protect the public from the burden of supporting a person who has a parent or child able to support him or her. (*Swoap* v. *Superior Court* (1973) 10 Cal.3d 490, 502-503 [111 Cal.Rptr. 136, 516 P.2d 840]; see Welf. & Inst. Code, § 17000.) At present, it is only the support from her mother which insulates Lisa from becoming a public charge.

In proposing a construction of "person in need," which closely resembles the *Duffy* court's interpretation of "poor person," defendant places great emphasis on the unlikelihood that Mrs. Chun will cease supporting Lisa so long as she can afford to supply such financial assistance. Evidence concerning the possibility that Lisa's mother would withdraw her support of Lisa emanates solely from Mrs. Chun's own testimony. On direct examination, she testified as follows:

"Q   [Counsel for Mrs. Chun] Now if you do not get the amount of support for Lisa from Dr. Chun that you're asking for, will you continue to support Lisa in spite of that?

"A   I will just have to continue to draw, as I have done in the past, on what is in my savings. This child will not be turned out.

"Q   So in other words, regardless of whether Dr. Chun supports her or not, she's going to end up getting the same support.

"A   Not—not as much. . . ."

Lisa's mother testified further in this regard on cross-examination:

"Q   [Counsel for Dr. Chun] Just so there is no question, Mrs. Chun, you would certainly make every effort, would you not, to continue to provide for Lisa, regardless of what order this Court makes with regard to support or contribution from Dr. Chun; would you not?

"A   I have stated before, no child of mine will ever be turned into the street."

It would be incongruous to hold that the understandable pledge of support tendered by Mrs. Chun has the legal effect of excusing defendant from the fulfillment of the duty which section 206 seems unequivocally to impose on every solvent parent of a disabled person in need.

The legislative purpose of shielding the public from the burden of supporting Lisa requires a reasonable and logical interpretation of the statutory language. We are satisfied that the public's interest in parental support for Lisa would be jeopardized by a holding that, because of her mother's support to date, Lisa is not a person in need, under section 206. It is beyond dispute that the public is less likely to have to assume the burden of Lisa's support if both her parents, representing separate, viable sources of financial security, assume positions of responsibility so as to insulate Lisa from the sort of penury that would give impetus to mechanisms of public support. It is inconceivable to us that section 206 should be read to absolve defendant from his obligation until such time as Lisa's mother breaches the same duty of support or becomes unable to provide adequately for Lisa. (See *Britton v. Steinberg* (1962) 208 Cal.App.2d 358, 360 [24 Cal.Rptr. 831].) Moreover, we note the manifest unfairness which would result from holding that, by virtue of her mother's prior and promised support, Lisa is not a "person in need". Such a holding, predicated, as it ultimately must be, upon Mrs. Chun's conscious choice to comply with section 206 rather than see Lisa "turned into the street," would affix the imprimatur of the court on the current situation in which Lisa's mother continually shoulders the entire burden of her support, while her father reposes in apparent wealth.

We also consider this question of statutory construction from the perspective of Lisa, the most direct beneficiary of section 206. It cannot be that Lisa must disavow her mother's continued support, and thereby make herself a public charge, in order to establish her right to support from her father, pursuant to section 206. ▄▄ ▄▄ ▄▄ ▄▄ ▄▄ Such an interpretation of section 206 runs contrary to its purpose of preventing a disabled person in need from becoming a public charge.[4] (See *Britton v. Steinberg, supra,* 208 Cal.App.2d at p. 360.)

---

[4]Absurd results can easily be foreseen by projecting defendant's interpretation of the phrase "person in need" onto two specific hypothetical situations. Each situation discussed below involves a child (with two divorced and solvent parents) who, after reaching the age of majority, becomes incapacitated, thereby losing his ability to support himself.

In the first situation, the child's father, recognizing a moral obligation to support his son on a permanent basis, consults his attorney regarding his legal obligation to do so. Under defendant's interpretation of "person in need", the attorney would advise the father that, while doubtless the son is in need, assuming the burden of support for now and the foreseeable future will relieve the mother of her apparent obligation under section 206 to give her son support. This situation raises the possibility that the father will be deterred from supporting his son adequately until such time as the mother agrees to, or is compelled by court order to, provide coextensive support. Such a delay in support could cause the son to become a public charge.

In the second situation, both the mother and father balk at supporting their adult son. The son sues both parents for support under section 206 and the court orders each parent to pay a certain amount each month. As soon as the mother complies with the court's order during the first month, the father could conceivably move for modification of the order on the ground that whatever duty the court originally discerned in him to support his son has been extin-

For the foregoing reasons, we hold that, notwithstanding her mother's support, Lisa is a "person in need who is unable to maintain herself by work" and, accordingly, that section 206 imposes on defendant the duty to support Lisa to the extent of his ability.

■■■ As a consequence of that conclusion, there remains a single issue, essentially tendered by defendant in his cross-complaint, i.e., whether or not section 206 imposes on both defendant and Mrs. Chun a joint and several obligation to support Lisa such that defendant, having properly been ordered to pay monthly support under section 206, is entitled to prospective equitable contribution from Mrs. Chun of her proportionate share of Lisa's monthly support.[5]

Preliminarily, we take note of *Tuller v. Superior Court* (1932) 215 Cal. 352 [10 P.2d 43], which also involved an action by an adult daughter against her father for support under section 206. There, the trial court sustained the father's demurrer on the ground the plaintiff failed to join her mother as a defendant. In reversing the judgment, the Supreme Court stated: "It is contended that [section 206] establishes a *joint* liability of the father and mother, which cannot be enforced in an action against one without joinder of the other. Such an interpretation of the section is unreasonable on its face, for it would also necessitate joinder of the *children* of such person, if any existed. Nothing in the language of the statute beyond the equivocal term 'their' suggests that the obligation is not individual and several as to each

---

guished because the son, being supported by his mother, is no longer a "person in need" under section 206.

The foregoing makes plain that the duty set forth in section 206, like all duties designed to protect the public at large, must be enforced against all those persons whom the Legislature has seen fit to declare responsible, without regard to whether anyone or no one already performs that duty.

[5]The concepts of joint liability, joint and several liability, and individual and several liability (also designated simply as "individual liability") derive from contract law and, to some extent, tort law. (See 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts §§ 513-519, pp. 440-443; 4 Witkin, *op. cit. supra,* Torts, §§ 30-36, pp. 2329-2335.) In those two areas, a legal obligation is classified as joint, joint and several, or individual and several based on the conduct of the obligors. Hence, there is manifest difficulty in applying the same three concepts to the subject obligation, which arises by operation of law and is based solely on the existent condition of the obligee. (See fn. 7, *infra.*)

In addressing this issue we also take note of section 208, which provides: "A parent is not bound to compensate the other parent, or a relative, for the voluntary support of his child, without an agreement for compensation, nor to compensate a stranger for the support of a child who has abandoned the parent without just cause. Nothing in this section shall be construed so as to relieve the parent of the obligation to support a child during any period in which the state, county, or other governmental entity furnishes support for the child." Manifestly, this section has no application since defendant has asserted a claim for *prospective* contribution as a means of relieving part of the support obligation which he will undertake *involuntarily* so as to comply with the trial court's order.

person named therein." (At pp. 354-355; accord *Garcia* v. *Superior Court* (1941) 45 Cal.App.2d 31, 35-36 [113 P.2d 470].)

The *Tuller* decision then rejected the father's contention that the plaintiff's mother was an indispensable party to the support action. That contention was based on the erroneous premise that section 206 imposes a *joint* support obligation on both parents of a needy person, a position which the *Tuller* court deemed "unreasonable on its face. . . ." (At p. 354.) ▮▮ Two or more obligors are considered jointly liable only if each is bound to render the *same* performance to the obligee. (Rest., Contracts, § 112.) Nothing in the language of section 206 indicates Lisa's parents are obligated to render to her the very same performance. Indeed, by the terms of the section, defendant and Mrs. Chun are bound to provide Lisa only such support as each can afford to pay. Hence, strictly speaking, joint liability is not imposed by the section.

We are also satisfied that the Supreme Court's concomitant intimation that the parental obligation under section 206 is "individual and several" as to each parent merely reflects the court's rejections of the joint liability theory and was not intended in any other technical sense. ▮ It is fundamental to statutory construction that a provision should be construed consistently with the Legislature's intent and in such manner as not to produce unreasonable results. (*Pollack* v. *Hamm* (1970) 3 Cal.3d 264, 273 [90 Cal.Rptr. 181, 475 P.2d 213].) ▮ Having already noted that section 206 seems unequivocally to impose on every solvent parent of a disabled person in need the duty to support such person, it would be unreasonable to hold that defendant's support obligation is individual and several. The legal effect of such a holding would be, of course, to foreclose defendant from seeking contribution from Mrs. Chun for support he provides Lisa. (*Garcia* v. *Superior Court, supra,* 45 Cal.App.2d 31, 35.) In a practical sense, so holding would, quite possibly, reinstate the situation in which only one of Lisa's parents fulfills the legal obligation imposed on both of them by section 206. We reiterate that such an arrangement represents an interpretation of the section which ignores the statute's purpose of providing needy persons the surest possible insulation from dependency on the public. We believe the rational interpretation of section 206 is that the section imposes a support obligation collectively on family members in proportion to their respective abilities to provide support.

We therefore hold that section 206 imposes on both Lisa's parents a duty of support that is closely akin to a joint and several obligation. Under the circumstances here present, the trial court was obligated to ascertain the amount of Lisa's monthly expenses and, by an order binding upon both her parents, provide for the payment of sufficient support. It appears the trial

court indeed ascertained the amount of Lisa's monthly expenses ($1,050). Neither party challenges the soundness of that determination. In sustaining the allegations of plaintiff's complaint, the trial court ordered defendant to furnish support in the amount of $1,050 each month. As we view the judgment, the court's sole error lay in rejecting the claim in defendant's cross-complaint that Mrs. Chun owed a correlative duty of support. Accordingly, the case must be remanded for determination of the amount which Mrs. Chun is able, and hence obligated, to contribute monthly to Lisa's support. Once such amount, if any, is ascertained, the trial court may, by way of according defendant whatever contribution is due him, fashion any equitable relief consistent with the speedy, efficient, and continual furnishing of monthly support to Lisa pursuant to section 206.[6]

■  Finally, we observe that the trial court, having jurisdiction to enforce the provisions of section 206, possesses the "power to make all orders necessary for that purpose, including the orders for suit money [and] counsel fees . . . ." (*Paxton* v. *Paxton* (1907) 150 Cal. 667, 672 [89 P. 1083].) Inasmuch as plaintiff "stood as much in need of an attorney in the appellate as in the lower court" (*Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 637, fn. 24 [186 Cal.Rptr. 754, 652 P.2d 985], quoting *Painter* v. *Estate of Painter* (1889) 78 Cal. 625, 627 [21 P. 433]), the trial court is instructed to include in its order, binding as set forth above on defendant and Mrs. Chun, an award of the amount it determines plaintiff incurred as costs and attorney fees in defending the judgment on appeal.

The judgment is reversed in part as specified herein and the case remanded for proceedings in accordance with the views expressed in this opinion. In all other respects, the judgment is affirmed.

Blease, Acting P. J., and Sparks, J., concurred.

---

[6]The statutes are many which impose support obligations on parents for the benefit of a child who has been or becomes unable to furnish such support to himself or herself. The evident purpose of such provisions is to resuscitate parental liability for support, thereby relieving the public of its self-imposed support obligations, such as Welfare and Institutions Code section 17000. (See Assem. File Analysis, Assem. Office of Research (1983-1984), Assem. Bill No. 846, Sept. 13, 1983.) In many such enactments, all of which followed adoption of section 206 (see *Swoap* v. *Superior Court, supra,* 10 Cal.3d at pp. 502-503), the Legislature has explicitly characterized the parental support obligations as joint and several liability. (See, e.g., Welf. & Inst. Code, §§ 903, 903.1 and 903.2.) We commend to the court on remand a review of cases involving the fashioning of equitable relief according to such provisions.