[Civ. No. 10456.   First Appellate District, Division Two.—November 17, 1937.]

In the Matter of the Estate of ANDREW O. SONNICKSEN, Deceased.   MARTHA   SONNICKSEN,   Appellant,   v. KARSTEN SONNICKSEN et al., Respondents.

Paul A. McCarthy and Lakin & Leve for Appellant.

Kenneth R. McDougall for Respondents.

SPENCE, J.—This is an appeal by Martha Sonnicksen, the widow of the deceased, from an order of the probate court denying her "Petition of executrix for an order directing conveyance of real estate pursuant to contract of decedent."

The deceased was formerly married to Else Sonnicksen, who died on December 31, 1930.   Respondents are the issue of said former marriage.   Shortly after January 1, 1931, deceased and appellant, who was then Martha Sullivan, signed

a written agreement which bore said date. The agreement contained many unusual provisions. It is difficult to briefly set forth its terms and we therefore set it forth in full.

"THIS AGREEMENT, made at Palo Alto, Santa Clara County, California, this first day of January, 1931, between ANDREW O. SONNICKSEN, widower, of said County and State, party of the first part, and MARTHA SULLIVAN, of the same place, party of the second part,

"WITNESSETH:

"WHEREAS, the parties hereto now reside and have since about the month of January, 1931, resided together in order that the first party shall have human companionship and the care and nursing that may be required by him by reason of his age and prospect of infirmity; and

"WHEREAS, the second party is a trained nurse by profession and practiced her profession actively until requested to refrain therefrom by the first party for the purpose of affording first party more companionship and the society of home life, and pursuant thereto the second party has refrained and continues to refrain from engaging in professional nursing work at the request of the first party; and

"WHEREAS, the expenses of the home where the parties hereto and the daughter of the second party reside are maintained equally by the first and second parties; and

"WHEREAS, the first party is desirous of making provision for the second party, in addition to the first party's contribution to the expenses of the maintenance of the parties' common home;

"NOW, THEREFORE, in consideration of the premises and of the mutual covenants herein contained, the parties hereto hereby agree with each other as follows:

"1. The second party agrees to continue during the life of the first party to render to him such companionship, care and nursing as may be required by him, and during such period to refrain from engaging in her nursing profession for the purpose of providing for the first party the greater companionship and society desired by the first party.

"2. During such time as the parties hereto maintain a common home each of the parties shall bear one-half of the cost thereof, and the daughter of the second party may continue to reside in such home as long as agreeable to the parties hereto. Nothing herein contained shall require a continu-

ance of said common home longer than shall be mutually agreeable, and either of the parties shall be, and hereby is, permitted to terminate such arrangement at any time, subject to the other provisions of this agreement.

"3. In addition to the payment equally by the first party and second party of the expenses of the maintenance of such common home for the parties hereto, first party agrees to pay to the second party during such time as the first party chooses so to do, an additional sum of $100.00 per month for the care and companionship to be provided for the first party by the second party. The second party agrees to repay to the first party such sum of $100.00 on account of the purchase price of the real and personal property hereinafter described.

"4. The first party agrees that if the provisions hereinabove contained respecting the maintenance of a common home for the parties hereto and the care and companionship of the first party by the second party shall continue during the life of the first party, the first party will grant, bargain, sell, assign, transfer and convey to the second party, at the moment immediately before the death of the first party, the real and personal property hereinafter described as compensation to the second party for such companionship and care.

"The property herein referred to consists of that certain real property situated in the County of San Mateo, State of California, particularly described as follows:"

(Describing certain real property and a certain automobile.)

"5. If the parties hereto shall mutually agree to terminate this agreement during the life of the first party, or if the first party, with or without cause, shall terminate this agreement during his lifetime, either by notice in writing to the second party of such termination or by making his abode elsewhere than with the second party, or by any other convenient means of termination of this agreement, the second party shall have absolutely no right, title, interest or claim to the property herein described, or any part thereof, or against the first party or his estate in case of his death, excepting as hereinafter provided, and the first party shall not by any such termination of this agreement be deemed to have breached or broken this agreement or any promise or covenant on his part.

"6. The second party is hereby given the option, during the continuance of this agreement, of paying to the first party any sum or sums in addition to the sums hereinabove provided to be paid to the first party by the second party upon the purchase price of the real and personal property hereinabove described. If this agreement is terminated by mutual consent or by the first party without the consent of the second party, either for cause or without cause, first party shall, upon any such termination, be obligated to repay to the second party within thirty (30) days after such termination of this agreement any and all sums that may be paid by the second party to the first party pursuant to the provisions of this paragraph, it being understood that the payments provided for in this paragraph are to be made, if made at all, by the second party from moneys received from other sources than from the first party hereto.

"7. During the lifetime of the first party and until the moment immediately preceding his death the second party shall have no right, title or interest in or claim to the real or personal property hereinabove described, or any part thereof.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands the day and year first hereinabove written. Executed in duplicate.

"A. SONNICKSEN,
"MARTHA SULLIVAN."

We deem it unnecessary to pass upon the validity of said agreement or the effect of the various provisions thereof. It should be stated, however, that the so-called additional sum of $100 per month, the payment of which was made optional with the deceased under paragraph 3, was never paid at any time and, of course, said sum was never repaid by appellant to deceased on account of the undisclosed "purchase price" of the property. It should be further stated that no additional sums were paid on the undisclosed "purchase price" by appellant to deceased from other sources under the optional provisions of paragraph 6. We may therefore treat said agreement, as it is treated by appellant, as one for the performance of services by appellant for a compensation as provided by the terms and provisions of said agreement.

About a year and a half after said agreement was executed and on June 23, 1932, deceased and appellant married and thereafter lived together as man and wife until the death of the deceased on May 6, 1935. Appellant was appointed the executrix of the last will and testament of the deceased and filed her petition, presumably under section 850 of the Probate Code, seeking an order directing the conveyance of the real property mentioned in said agreement to her daughter as her nominee. She appeals from the order denying said petition.

We find no error in the ruling of the court below. Respondents urge several points in support of said ruling but it is only necessary to discuss one of them. ▮ It is respondents' contention that the contract of marriage and the marriage of the parties pursuant thereto terminated the agreement of January 1, 1931, and in our opinion this contention must be sustained.

Said written agreement was made by the parties while unmarried and it is conceded that it was not made in contemplation of marriage. When the parties subsequently entered into a contract of marriage and became husband and wife, one of the implied terms of the contract of marriage was that appellant would perform without compensation the services covered by said written agreement. (30 C. J. 520.) The terms of the two contracts were inconsistent and the necessary legal effect of the marriage contract was to terminate the obligations of the parties under said written agreement. (*In re Callister's Estate,* 153 N. Y. 294 [47 N. E. 268, 60 Am. St. Rep. 620] ; see, also, 30 C. J. 676, sec. 255; 13 C. J. 603, sec. 628.) We therefore conclude that appellant was not entitled to an order directing the conveyance of said real property.

The order denying the petition is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.