[Civ. No. 23764. First Dist., Div. One. Oct. 31, 1966.]

DEPARTMENT OF MENTAL HYGIENE, Plaintiff and Appellant, v. RICHARD O'CONNOR, as Administrator, etc., Defendant and Respondent.

Thomas C. Lynch, Attorney General, Asher Rubin and Elizabeth Palmer, Deputy Attorneys General, for Plaintiff and Appellant.

Richard O'Connor, in pro. per., for Defendant and Respondent.

SIMS, J.—This case comes before this court for hearing and decision pursuant to an order granting transfer following certification by the appellate department of the superior court

that such transfer appears necessary to settle important questions of law. (Cal. Const., art. VI, § 4e; Code Civ. Proc., § 988t; and Cal. Rules of Court, rules 61-65.) The question presented is whether the estate of a deceased husband is liable on a claim submitted by the state for care furnished to the decedent's deceased wife as a patient in a state mental institution during their joint married life.

On September 15, 1965, plaintiff and appellant, Department of Mental Hygiene, filed its complaint in the municipal court against defendant and respondent, Richard O'Connor, as the administrator of the estate of Barge E. Leonard, deceased, for the costs of care furnished decedent's wife as a patient in a state mental institution. From the complaint it appears: on or about April 18, 1957 Faye Leonard was admitted to Agnew State Hospital under an order made pursuant to the provisions of section 5100 [now § 5567] of the Welfare and Institutions Code where she remained a patient until her death on December 24, 1963. Barge E. Leonard, deceased, was the husband of Faye Leonard during the period from February 1, 1963, through and including December 24, 1963. The cost of care, support, maintenance and medical attention for this period is $2,895.23, no part of which has been paid by the defendant administrator.

The defendant denied liability by entering a general denial by paragraph and also by alleging lack of information and belief. At the same time the demurrer previously filed by the defendant was withdrawn. Both parties then moved for judgment on the pleadings; the motion of the department was denied and judgment for the defendant was entered. Upon appeal by the department the judgment was reversed by the appellate department of the superior court. Consideration by this court ensued from the granting of an order for certification.

The administrator contends that the decision in *Department of Mental Hygiene* v. *Kirchner* (1964) 60 Cal.2d 716 [36 Cal. Rptr. 488, 388 P.2d 720] and (1965) 62 Cal.2d 586 [43 Cal. Rptr. 329, 400 P.2d 321], renders unconstitutional the provisions of section 6650 of the Welfare and Institutions Code which provide for the liability the state seeks to impose.[1]

---

[1]Welfare and Institutions Code section 6650 provides: ''The husband, wife, father, mother, or children of a mentally ill person or inebriate, the estates of such persons, and the guardian and administrator of the estate of such mentally ill person or inebriate, shall cause him to be properly and suitably cared for and maintained, and shall pay the costs and charges of his transportation to a state institution for the mentally

In *Kirchner* the court held that an adult child could not be charged for costs incurred for her mentally ill parent while the latter was a patient in a state mental hospital. Of major significance in that case was the fact the patient had a sufficient personal estate to cover the expenses. The provisions of Welfare and Institutions Code section 6650 which provide for the liability of the child for the parent were found to be an invalid class discrimination in violation of article I, sections 11 and 21 of the California State Constitution which guaranty equal protection of the law.[2]

The first opinion states: "A statute obviously violates the equal protection clause if it selects one particular class of persons for a species of taxation and no rational basis supports such classification." (60 Cal.2d at p. 722.)

The question for decision is whether *Kirchner* eliminates all of the liabilities set forth in section 6650 of the Welfare and Institutions Code. The administrator argues that *Kirchner* compels the conclusion that a spousal relationship is also an invalid classification and denies equal protection of the law. The department argues *Kirchner* should be restricted to its facts; that even though an adult child cannot be held financially responsible for care received by a parent at a state institution when the patient has a sufficient personal estate, a spousal relationship stands on different footing. The department's argument is supported by the different incidents that flow from a spousal relationship, recent cases, and language of *Kirchner* itself.

The essence of *Kirchner* is that no person or class of persons should be charged with support where no rational basis underlies the classification. However, *Kirchner* involved the relationship between a parent and adult child; the instant case

---

ill or inebriates. The husband, wife, father, mother, or children of a mentally ill person or inebriate, and the administrators of their estates, and the estate of such mentally ill person or inebriate, shall be liable for his care, support, and maintenance in a state institution of which he is an inmate. The liability of such persons and estates shall be a joint and several liability, and such liability shall exist whether the mentally ill person or inebriate has become an inmate of a state institution pursuant to the provisions of this code or pursuant to the provisions of Sections 1026, 1368, 1369, 1370, and 1372 of the Penal Code."

[2] Article I, section 11, provides: "All laws of a general nature shall have a uniform operation."

Article I, section 21, provides: "No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the Legislature; nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens."

involves spouses. ■ Marriage is a contract voluntarily entered into, one of its incidents being the support and maintenance of the wife by the husband. This obligation ·is recognized and applied in every divorce and separate maintenance action. The obligation is not only historic but statutory.[3] ■ Also, the state has a legitimate interest in the husband's support of his wife; the desire to obviate her becoming a public charge. (*Miller* v. *Superior Court* (1937) 9 Cal.2d 733 [72 P.2d 868].)

This court recently reviewed the ramifications of *Kirchner* in *In re Dudley* (1966) 239 Cal.App.2d 401 [48 Cal.Rptr. 790] (hearing den. by Supreme Court). In *Dudley* the right of the County of Alameda to collect expenses from a parent for services provided the daughter, a mentally deficient person who had been voluntarily placed in a state institution by the parents, was upheld. The opinion stated: "If *Kirchner* stands for the proposition that when the state, in the exercise of its promotion of the general welfare, commits a person either for the protection of society or for his protection or rehabilitation, or any combination thereof, it cannot thereafter seek reimbursement except from such person or his estate, that case then is determinative of the matter in issue. On the other hand if *Kirchner* is limited to its facts and does not preclude the state from seeking reimbursement from those otherwise legally responsible for the care, support and maintenance of the person treated, inquiry must be directed to a determination of whether or not respondent is responsible for the support of her adult daughter; and, if so, whether the state has properly provided for the enforcement of any obligation arising from that responsibility." (239 Cal.App.2d at p. 407; emphasis added; fns. omitted.)

Both *Dudley* and the instant case involve a relationship where the party to be charged with financial responsibility is liable for the support of an incompetent in addition to the statutory liability that is being attacked. In *Dudley* it is the obligation of a parent to support a child, in the present case the duty of a husband to support his wife.

In *County of Alameda* v. *Kaiser* (1965) 238 Cal.App.2d 815 [48 Cal.Rptr. 343], the right of a county to recover for treat-

[3]Civil Code section 174 provides as follows: "If the husband neglects to make adequate provision for the support of his wife, except in the cases mentioned in the next section, any other person may, in good faith, supply her with articles necessary for her support, and recover the reasonable value thereof from the husband."

ment furnished a minor son in a county hospital was upheld. The opinion recites: "We conclude that Philip must be deemed a minor. Our question then is whether the recent ruling of our Supreme Court (*Department of Mental Hygiene* v. *Kirchner, supra,* 60 Cal.2d 716) bars liability of defendant mother.

"Parental liability for support of a minor child is of ancient origin. It was recognized by such writers as Coke and Blackstone (1 Schouler, Marriage, Divorce, Separation and Domestic Relations, 857), and was the subject of an old English statute (43 Eliz. I, c. 2). It has long been statutory in California (Civ. Code, §§ 196, 206, 207). One reason for imposing this obligation is to prevent the child from becoming a public charge (*Federal Mutual Liability Ins. Co.* v. *Industrial Acc. Com., supra,* 195 Cal. 283, 289-290 [233 P.335]). This long-recognized liability, often enforced, has not been held to be based upon an unreasonable classification. Thus *Kirchner's* prescription of denial of equal protection seems to have no application." (238 Cal.App.2d at pp. 817-818.)

The conclusion from *Kaiser* and *Dudley* is that unless a person is held for the primary purpose of protecting the public in the course of the administration of laws prohibiting crime, reimbursement can be secured if the proper relationship exists. (See also *County of Alameda* v. *Espinosa* (1966) ᵃ243 Cal.App.2d 534, 548 [52 Cal.Rptr. 480], hearing in Supreme Court den.)[4]

Additional support for this conclusion may be found in the opinion of *Kirchner* itself. In that case the department cited *Guardianship of Thrasher* (1951) 105 Cal.App.2d 768 [234 P.2d 230], as authority for its contention than an adult child should be held responsible for care and services furnished a parent. *Thrasher* held that the husband of an incompetent committed to a state mental hospital was under a duty to support her therein even though she had an estate of her own. The court in *Kirchner* took special pains to distinguish interspousal liability from the one which was under attack in *Kirchner*. The court stated: "That case is of small help to plaintiff here; manifestly, the basic obligation and relevant status of the *husband* arose from the marriage contract to which he was

---

[4]It is established that *Kirchner* does not preclude recovery from the patient's estate. (*Estate of Preston* (1966) 243 Cal.App.2d 803, 809 [52 Cal.Rptr. 790]; *Guardianship of Hicks* (1964) 228 Cal.App.2d 629, 632 [39 Cal.Rptr. 698].

a consenting party and no consideration was given to the question as to whether imposing liability upon one spouse for support of the other in a state institution denies equal protection of the law to the servient spouse." (60 Cal.2d at p. 719.)

Finally, *Kirchner* was concerned with the imposition of liability upon a relative who was not otherwise liable for the patient's care since the patient had a personal estate sufficient to pay for the treatment. This classification, without regard to the means of the parent-patient or resources of the adult child, was found to be arbitrary.

To be unconstitutional under *Kirchner* there must be no rational relationship that justifies the burden of liability. A spousal relationship imposes an obligation of care in addition to the responsibility the statute creates. Therefore, to hold a marital classification for liability discriminatory would result in conferring a gift upon the husband at the expense of the public, since but for the payments made by the department, the husband would be legally responsible.

The conclusions of the appellate department of the superior court are approved. The judgment of the municipal court is reversed with directions to enter judgment on the pleadings for plaintiff.

Sullivan, P. J., and Molinari, J., concurred.