[Civ. No. 38012. Second Dist., Div. Four. Dec. 30, 1971.]

ROBERT JOSEPH VINCENT et al., Plaintiffs and Respondents, v. THE STATE OF CALIFORNIA et al., Defendants and Appellants.

**COUNSEL**

Evelle J. Younger, Attorney General, Melvin R. Segal, Deputy Attorney General, and John D. Maharg, County Counsel, for Defendants and Appellants.

Howard M. Van Elgort, Boyd S. Lemon, Daniel S. Brunner, Michael A. Fischer and Valerie Vanaman for Plaintiffs and Respondents.

**OPINION**

**DUNN, J.**—On June 30, 1970 plaintiffs commenced a class action (Code Civ. Proc., § 382) for declaratory and injunctive relief from the provisions of Welfare and Institutions Code section 13700 and a regulation promulgated pursuant thereto which prohibits payment for attendant care rendered to a recipient of benefits under the Aid to the Totally Disabled (ATD) program (Welf. & Inst. Code, § 13500 et seq.; 42 U.S.C.A. § 1351 et seq.) when such care is provided by the recipient's spouse with whom he is living.

Plaintiffs are two ATD recipients and their wives, who furnish attendant care to the recipients. Plaintiffs are residents of Los Angeles County, but the class purportedly represented consists of "all ATD recipients who have attendant service provided by a spouse who has given up other employment in order to serve as an attendant and the spouses who are providing such services." Defendants are the State of California and its Department of Social Welfare (SDSW), the County of Los Angeles and its Department of Public Social Services (DPSS), and the directors of these agencies, which collectively administer the ATD program throughout the state.

The complaint alleged: in 1964 each of the plaintiff wives gave up outside employment[1] in order to work as an attendant for her totally disabled

---

[1] As to the Vincents, we learn from affidavits (see fn. 5) that Mr. Vincent became a quadriplegic as the result of an accident in December 1963. He and Mrs. Vincent were not married until January 1967. She had worked for a bank. During the period from June to December 1964 she received instruction from doctors and others on the care to be given to Vincent. When Vincent was discharged from the hospital in December 1964 she left her job with the bank in order to take care of him.

husband; since that time she had worked continuously as his attendant, and defendants had paid a fixed monthly sum for such service; however, in April 1970 defendants informed plaintiffs that after July 1st the wives no longer would be paid for their attendant services; such refusal to pay was based on a regulation (§ 44-239.211 of SDSW Eligibility Assistance Standards Manual) promulgated by the SDSW which was to become effective July 1, 1970, and which provided that no allowance for attendant service would be made for the spouse of an ATD recipient serving as attendant when the recipient was residing with the spouse; the regulation was adopted pursuant to Welfare and Institutions Code section 13700, which provides in pertinent part that "[a]llowance for attendant services shall not be made when rendered by a responsible relative with whom the recipient is living"; under other provisions of the regulation, recipients of Old Age Security (OAS) and Aid to the Blind (AB) were permitted to have their spouses serve as paid attendants.

It was further alleged that the statute and regulation were void because: (1) they unreasonably discriminated against plaintiffs as ATD recipients and ATD attendant spouses, and hence violated the equal protection clause of the Fourteenth Amendment of the United States Constitution; and (2) they were in conflict with 42 United States Codes Annotated section 1351 et seq. (grants to states for aid to the permanently and totally disabled) and the regulations promulgated thereunder by the Department of Health, Education and Welfare (HEW).[2]

Plaintiffs sought judgment declaring that the statute and regulation were void and enjoining defendants from terminating attendant care payments to plaintiffs on the ground such care was being provided by a spouse with whom the ATD recipient was living.

Defendants filed an answer admitting: since 1964 they had paid plaintiff ATD husbands for attendant services rendered by their spouses; their refusal to make such payments after July 1, 1970 was based on the SDSW regulation which was adopted pursuant to Welfare and Institutions Code section 13700; under the regulation, OAS and AB recipients were entitled to payment for services of their spouses as atttendants. As an affirmative defense, it was alleged that the complaint failed to state a cause of action because plaintiffs had not exhausted their administrative remedy.

---

[2]Plaintiffs alleged that the statute and regulation were void on the further grounds, inter alia, that they (1) violated the public policy of the State of California against encouraging divorce in that an ATD attendant spouse had to divorce or separate from the recipient spouse in order to be paid for attendant services, and (2) were in conflict with Welfare and Institutions Code section 13600, which provides that no relative of an ATD recipient shall be liable to contribute to his support. As the judgment was not based upon either of these grounds, they will not be considered herein.

Plaintiffs moved for summary judgment (Code Civ. Proc., § 437c). On October 6, 1970 summary judgment was entered on the statutory grounds that there was no defense to the action and that no triable issue of fact was presented. The judgment ordered the answer stricken and declared that section 13700 and the SDSW regulation were void insofar as they provided for termination of attendant care payments to plaintiffs and all others similarly situated, such care being provided by a spouse with whom the ATD recipient was living.[3] The stated basis of the judgment was: (1) that the statute and regulation violated the equal protection clause, and (2) they were in conflict with 42 United States Codes Annotated section 1351 et seq. and the HEW regulations promulgated pursuant thereto.

Defendants appeal from the judgment (Code Civ. Proc., §§ 437c, 904.1, subd. (a)) on a clerk's transcript, only.[4] They concede there is no controversy as to the material facts, which appear as follows from the pleadings and the affidavits:[5] respondents, individually and as a class, are either ATD recipients or their spouses who have given up other employment in order to serve as attendants to the recipients; the recipients and the spouses live together; payment for attendant services rendered by spouses was denied after July 1, 1970 because of the provisions of Welfare and Institutions Code section 13700 and its companion regulation, section 44-239.211 of the SDSW Eligibility Assistance Standards Manual; under other provisions of the regulation, spouses of OAS and AB recipients may be paid for their attendant services.

There were no issues of fact to be tried. The sole issues presented were issues of law, which appropriately may be determined by summary judgment. (*Loma Portal Civic Club* v. *American Airlines, Inc.* (1964) 61 Cal.2d 582, 588 [39 Cal.Rptr. 708, 394 P.2d 548]; *Nelson* v. *United States Fire Ins. Co.* (1968) 259 Cal.App.2d 248, 251 [66 Cal.Rptr. 115]; *Magna Development Co.* v. *Reed* (1964) 228 Cal.App.2d 230, 234 [39 Cal.Rptr. 284]; *Goldstein* v. *Hoffman* (1963) 213 Cal.App.2d 803, 811 [29 Cal. Rptr. 334].) ▮ The only question on this appeal is whether the trial

---

[3]By the terms of the judgment, the court retained jurisdiction of the action for the purpose of granting any injunctive relief which might become necessary.

[4]Contrary to all rules on appeal (cf. Cal. Rules of Court, rule 13), respondents reprehensibly have gone far outside the record, attempting to add to it by attaching appendices to their brief and arguing such matter as though it were properly brought before us. We cannot condone this practice and have not considered the material, none of which was certified to be part of the record as required by rule 8, California Rules of Court.

[5]The affidavits filed in connection with the motion for summary judgment are not included in the record on appeal. Therefore, as authorized by rule 12(a), California Rules of Court, we have had the superior court file transmitted to us in order that we might review the affidavits.

court properly resolved these issues, upon which its judgment was based, by determining that section 13700 and its companion regulation[6] violate the equal protection clause and are inconsistent with 42 United States Codes Annotated section 1351 et seq. and the HEW regulations.

## I. *Equal Protection*

The Welfare and Institutions Code establishes separate programs for old age security (OAS, § 12000 et seq.), aid to the blind (AB, § 12500 et seq.) and aid to the needy disabled (including the totally disabled, ATD, § 13500 et seq.) Sections 12152[7] and 12652[8] unqualifiedly authorize payment for attendant services rendered to OAS and AB recipients, respectively. On the other hand, section 13700 prohibits payment for attendant services rendered to a needy disabled (including ATD) recipient by "a responsible relative with whom the recipient is living."[9] The regulation in question, section 44-239.211 of the SDSW Eligibility Assistance Standards Manual, authorizes an allowance for attendant care furnished OAS and AB recipients by a spouse who "is able to work but is unable to accept employment or must relinquish employment in order to care for the disabled recipient." As to ATD recipients, however, the regulation states that "[a]llowance of attendant service shall not be made . . . for the spouse of an ATD recipient serving as the attendant when the recipient is living with such relative." Hence, OAS and AB recipients are not denied payment for

---

[6]After entry of the summary judgment, section 13700 was amended by addition of the italicized language, as follows: ". . . Allowance for attendant services shall not be made when rendered by a responsible relative with whom the recipient is living, *except when the director determines that the provision of such services is necessary to prevent the institutionalization of the recipient and cannot be obtained from any person other than the responsible relative.*" (Stats. 1970, ch. 1432, § 1, p. 2779, eff. November 23, 1970.) Effective December 1, 1970 the regulation was amended to conform to the statutory amendment. However, such amendments did not render moot the issues determined by the judgment, for the statute and regulation still prohibit payment of attendant care fees for ATD spouses who reside with the recipients.

[7]Section 12152: "If the physical or mental condition of a recipient of aid [to the aged] . . . is such that he requires the services of a full-time or part-time attendant . . . . , he shall be entitled to an additional grant in an amount sufficient to pay for those services . . . ."

[8]Section 12652: "If the physical condition of a recipient of aid [to the blind] . . . is such that he requires the services of a full-time or part-time attendant . . . , he shall be entitled to an additional grant in an amount sufficient to enable him to pay for those services . . . ."

[9]Section 13700: ". . . Within the limit of the average grant set forth in this section, the department may provide for payment of an additional sum to those recipients [of aid to the needy disabled] whose physical or mental condition is such that they require the services of a full- or part-time attendant . . . Allowance for attendant services shall not be made when rendered by a responsible relative with whom the recipient is living . . . ."

their spouses' attendant services on the ground that they reside with the recipient, whereas ATD recipients are denied payment on such ground.

■ The Fourteenth Amendment permits the states a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. (*McGowan* v. *Maryland* (1961) 366 U.S. 420, 425 [6 L. Ed.2d 393, 399, 81 S.Ct. 1101].) Thus, classification does not of itself deprive a group of equal protection. (*Carrington* v. *Rash* (1965) 380 U.S. 89, 92 [13 L.Ed.2d 675, 678, 85 S.Ct. 775].) However, the classification must be based upon some difference between the classes which is pertinent to the purpose for which the legislation is designed. (*Asbury Hospital* v. *Cass County* (1945) 326 U.S. 207, 214 [90 L.Ed. 6, 13, 66 S.Ct. 61]; *Royster Guano Co.* v. *Virginia* (1920) 253 U.S. 412, 415 [64 L.Ed. 989, 990-991, 40 S.Ct. 560]; *County of San Bernardino* v. *Way* (1941) 18 Cal.2d 647, 658 [117 P.2d 453].) ■ "The equal protection clause forbids the establishment of laws which arbitrarily and unreasonably create dissimilar classifications of individuals when, looking to the purpose of those laws, such individuals are similarly situated." (*Williams* v. *Field* (9th Cir. 1969) 416 F.2d 483, 486.)

■ Appellants suggest that one reason justifying denial of payment for services rendered by ATD attendants who reside with their recipient spouses is that, by virtue of the marriage contract, one spouse is obligated to care for the other without remuneration. (Civ. Code, § 5100; *Estate of Sonnicksen* (1937) 23 Cal.App.2d 475, 479 [73 P.2d 643].) Such preexisting duty provides a constitutionally sound basis for a classification which denies compensation for care rendered by a husband or wife to his spouse who is receiving welfare assistance. (*County of San Mateo* v. *Boss* (1971) 3 Cal.3d 962, 967-968 [92 Cal.Rptr. 294, 479 P.2d 654]; *Department of Mental Hygiene* v. *Kolts* (1966) 247 Cal.App.2d 154, 163-165 [55 Cal.Rptr. 437]; *Dept. of Mental Hygiene* v. *O'Connor* (1966) 246 Cal.App.2d 24, 28-29 [54 Cal.Rptr. 432].)

However, no valid reason has been offered for permitting the distinction to be made between ATD recipients on the one hand and the OAS and AB recipients on the other. There doubtless are many differences among the three groups of recipients which constitutionally permit their being treated differently for purposes such as establishing eligibility for assistance, level of benefits, special services, and other factors. But insofar as one spouse has a duty created by the marriage contract to care for the other without compensation when they are living together, recipients of aid to the aged, aid to the blind and aid to the disabled are similarly situated. ■ As stated in *In re Antazo* (1970) 3 Cal.3d 100, 110 [89 Cal.Rptr. 255, 473 P.2d 999]: "However the equal protection clause does not require 'Absolute

equality' (*Douglas* v. *California, supra,* 372 U.S. 353, 357 [9 L.Ed.2d 811, 814, 83 S.Ct. 814]), is not 'a demand that a statute necessarily apply equally to all persons' (*Rinaldi* v. *Yeager* (1966) 384 U.S. 305, 309 [16 L.Ed.2d 577, 580, 86 S.Ct. 1497]) and permits a state to 'provide for differences so long as the result does not amount to . . . an "invidious discrimination." ' (*Douglas v. California, supra,* at p. 356 [9 L.Ed.2d at p. 814].) Simply stated the 'concept of the equal protection of laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' "

The amounts of aid which may be paid to recipients of OAS, AB and ATD are not computed in the same way. Thus, OAS (Welf. & Inst. Code, §§ 12150, 12151) and AB (§§ 12650, 12651) recipients are eligible for flat grants, whereas recipients of ATD (§§ 13700, 13701) receive an amount ". . . not to exceed an average grant computed statewide . . . of one hundred dollars ($100) per month." OAS and AB recipients who require attendant care may be entitled to additional flat grants (§§ 12152, 12652), whereas ATD recipients may receive funds for attendant care only "[w]ithin the limit of the average grant set forth in this section." From these differences it would appear the programs are differently funded, justifying on that basis the denial of attendant care payments for a spouse with whom an ATD recipient is living. However, a payment for ATD attendant care would affect the "average grant computed statewide" whether paid for services of a resident spouse or some other attendant. The apparent differences in funding thus afford no justification for the discrimination here found.

It follows that section 13700 of the Welfare and Institutions Code and section 44-239.211 of the SDSW Eligibility Assistance Standards Manual create an arbitrary classification and deny equal protection of the laws to ATD recipients and their attendant spouses[10] insofar as the statute and regulation prohibit payment for attendant care rendered to an ATD recipient by his spouse merely because they are living together. Thus, although there is no requirement that the state provide aid to the aged, blind or needy disabled, once it undertakes to do so the state may not "invidiously discriminate" between persons similarly situated.

## II. *Consistency With Federal Statutes and Regulations*

California's ATD program (Welf. & Inst. Code, § 13500 et seq.) is

---

[10]Neither the statute nor the regulation provides for payment to be made to the attendant spouses, but only to the aid recipient. Accordingly, some question might have been raised as to whether the attendant spouses were in position to complain. However, the point apparently was not raised below for which reason it is not considered here.

financed in part by funds received from the federal government under 42 United States Code Annotated section 1351 et seq. (grants to states for aid to the permanently and totally disabled), subchapter XIV of the Social Security Act. Therefore, in administering the program and expending such funds, this state must comply with applicable provisions of the Social Security Act and the regulations adopted pursuant thereto by the Department of HEW. (See Welf. & Inst. Code, § 10600; *Rosado* v. *Wyman* (1970) 397 U.S. 397, 408, 422-423 [25 L.Ed.2d 442, 453, 461, 90 S.Ct. 1207].) Any state statute or regulation inconsistent with such federal provisions is to that extent invalid. (*King* v. *Smith* (1968) 392 U.S. 309, 333, fn. 34 [20 L.Ed.2d 1118, 1134, 88 S.Ct. 2128].) However, our affirmance of the trial court's judgment under the equal protection clause makes it unnecessary to consider this second ground, which it used to support the same judgment.

The judgment is affirmed.

Jefferson, J., concurred.

**FILES, P. J.,** Dissenting.—The majority opinion holds that the Aid to the Totally Disabled (ATD) statute is unconstitutional on its face, in that persons under the Old Age Security (OAS) and Aid to the Blind (AB) statutes receive payment for care rendered by relatives with whom they live, while persons under the ATD program do not. It is apparent from the face of the statutes that OAS and AB are much more generously funded programs than the ATD program which is here under attack. What is more important, the OAS and AB statutes provide for aid, including attendant care, in fixed dollar amounts for each person qualifying, while the ATD statute provides that benefits must be apportioned so as not to exceed an average grant of $100 per month.

Thus, under OAS, Welfare and Institutions Code section 12151 gives to each recipient a maximum of $170 per month, plus cost of living adjustments, and section 12152 authorizes an additional payment not to exceed $300 per month for attendant care or other special services. The AB program is similarly structured. (§§ 12650-12652.)

The amount of aid allowed for the needy disabled is set forth in section 13700 as follows (as amended in 1970): "For needy disabled persons qualifying for aid under the provisions of this chapter, there shall be paid an amount equivalent to the actual needs of the recipient as set forth in this section, but not to exceed an average grant computed statewide for all recipients of aid under this chapter of one hundred dollars ($100) per month. In the event the average grant per recipient exceeds an amount of one hundred dollars ($100), the department shall take immediate steps to re-

duce or curtail payments for attendant services or other special services arising from their disability to the end that the monthly average per recipient for the full fiscal year does not exceed one hundred dollars ($100).

"The department shall establish a standard of assistance, within the limits set forth in this section, which will enable each recipient to maintain himself in decency and health. The department shall establish a standard to cover actual needs, common to all persons. Within the limit of the average grant set forth in this section, the department may provide for payment of an additional sum to those recipients whose physical or mental condition is such that they require the services of a full- or part-time attendant or other special services. . . . Allowance for attendant services shall not be made when rendered by a responsible relative with whom the recipient is living, except when the director determines that the provision of such service is necessary to prevent the institutionalization of the recipient and cannot be obtained from any person other than the responsible relative.

"The department shall give priority to persons in the greatest need without replacing other public or private resources which can provide the services."

Under OAS and AB, the grant of an allowance for attendant care has no impact upon the amount payable to any other recipient of aid. But under ATD all grants are interrelated. The statute puts a limit upon the total fund available—that is, $100 multiplied by the number of recipients in the program. Thus every dollar spent for attendant care for one recipient reduces *pro tanto* that which is to be divided among other recipients. The statute expressly commands that the department give priority to those in the greatest need, and to reduce or curtail payments for attendant services and other special services in the event the average grant exceeds the $100 limitation. It is quite reasonable to assume that a person who is receiving attendant care from a relative in his home is less in need than some other totally disabled persons.

As the majority opinion concedes, a welfare law may properly draw a distinction between persons who can receive assistance from a responsible relative and those who cannot. (See *County of San Mateo* v. *Boss* (1971) 3 Cal.3d 962, 967 [92 Cal.Rptr. 294, 479 P.2d 654].) I assume that the term "responsible relative," as used in section 13700, is limited to those relatives who are under a legal duty to provide support.

In the ATD system, with limited funds, it is not unreasonable to refuse to pay for attendant care being furnished by a member of the household who is under a legal duty to furnish support, because the result is to make more funds available for other persons whose needs are greater. This reason

for limiting attendant care does not exist in the OAS and AB systems, where the state has committed itself to payment of a specified sum to each person who meets the statutory standard of need.

It is arguable that the ATD statute as a whole is unconstitutional upon the theory that there is no sufficient reason for being less generous with the needy disabled than with the blind and the aged. But the judgment of the trial court accepts the validity of the $100 average limitation. The judgment appealed from finds section 13700 unconstitutional only with respect to the limitation on attendant care payments to relatives living in the home. Defendants can comply with the judgment only by paying to plaintiffs money which otherwise would be paid to someone else.

If we accept the constitutionality of the closed-end financing of ATD, the limitation on payments to responsible relatives is a sensible means of carrying out the thoroughly commendable legislative purpose to distribute the limited funds to those whose need is greatest. By reason of the difference in financing, which the parties and the court accept as valid, persons under ATD are not "similarly situated" with persons under the AB and OAS programs.

It is argued that refusing payment to relatives will not save any money because these unpaid relatives will cease to provide care and thereby cause the state to pay for nonrelated attendants. There is no evidence in the record as to the actual fiscal impact of that provision of the law upon the program as a whole. Whatever it may be, the actual result is not the test. The statute is constitutional if the Legislature could rationally have believed that this provision would make more money available for those in greater need. In this area of economic regulation a statute is constitutional if it bears " 'some rational relationship to a conceivable legitimate state purpose.' " (See *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 16 [95 Cal.Rptr. 329, 485 P.2d 529].)

I think the Legislature could reasonably have believed that some responsible relatives would care for a disabled member of the household, even without payment of the modest sum allowed for dependent care; and that the savings which would result would appreciably benefit others in the program. The possibility that the Legislature may have been mistaken in that assumption, or that some judges disagree with it, is not a basis for holding the statute unconstitutional.

When the judicial edict in this class action is engrafted upon the statutory system which requires that grants average only $100 per recipient, the benefits conferred upon the prevailing class necessarily reduce the meager

stipends available for those in the greater need. Regrettably no champion has appeared on behalf of the class of persons who lose by this decision.

I would reverse the judgment.

Appellants' petition for a hearing by the Supreme Court was denied February 23, 1972.