[Civ. No. 32095. First Dist., Div. One. June 18, 1973.]

CHRISTINA HYPOLITE, a Minor, etc., et al., Plaintiffs and Appellants, v. ROBERT B. CARLESON, as Director, etc., Defendant and Respondent.

## Counsel

Yvonne M. Renfrew, Robert Chartoff, Ralph Santiago Abascal, Edmund S. Schaffer, Jay-Allen Eisen and Christopher Hamilton for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, and David J. Bowie, Deputy Attorney General, for Defendant and Respondent.

## Opinion

**MOLINARI, P. J.**—This is an appeal by plaintiffs from a judgment denying relief on their complaint for declaratory and injunctive relief and their petition for writ of mandate.

Plaintiffs sought to challenge the exclusion by defendants of certain children from participating in the Aid to Families With Dependent Children program (hereinafter "AFDC") provided for in 42 United States Code sections 601-610, and Welfare and Institutions Code sections 11200-11488.[1]

Plaintiff Christina Hypolite (hereinafter "Christina") is a minor child, 11 years of age, residing with her paternal grandmother and legal guardian Bertha Hypolite, in the County of Alameda. Payments to Bertha Hypolite for the benefit of Christina were discontinued on the authority of Regulation 41-450.12 of the State Department of Social Welfare Eligibility and Assistance Standards (hereafter "the Regulation").

Plaintiff Michael Hallick Jensen (hereinafter "Michael") is a minor child, 16 years old, residing with his maternal grandfather and legal guardian Rollan Eller, in the County of Stanislaus. Eller's application for AFDC on behalf of Michael has been denied pursuant to the Regulation.

Christina was deserted by her parents at birth and was left with her grandmother. Christina's parents at the present time reside together in New Iberia, Louisiana, with their four other children and never have been, nor by a finding of defendant Carleson, are they now able to financially support Christina. Her grandmother is unable to provide for her.

Christina received AFDC relief through January 21, 1971, on the basis that her father in Louisiana was then unemployed. However, on January

---

[1] Unless otherwise indicated, all statutory references hereinafter made are to the Welfare and Institutions Code.

7, 1971; this aid was discontinued effective January 31, 1971, on the basis that the father was now employed. On January 25, 1971, a request for a hearing pursuant to section 10950 was submitted. On March 1, 1971, a hearing was held and on September 28, 1971, the referee denied aid.

Michael has resided with Eller since October 25, 1971, on which date he had gone voluntarily to the home of his grandfather complaining of parental neglect. His parents were contacted and indicated their refusal to accept the child back into their home. This refusal continues to the present time. Eller is now the legal guardian of Michael pursuant to the letters of guardianship issued January 18, 1972. Michael's parents reside together in Auburn, California, and have made no financial contribution to Michael's support since October 25, 1971. Eller is financially unable to provide for the child. On November 12, 1971, Eller, on behalf of Michael, made application for AFDC. On November 26, 1971, he was informed that his application had been denied on the basis of the Regulation.

Petitioners are seeking relief from the application of the Regulation on behalf of themselves individually and on behalf of all other children similarly situated. The issue presented is whether the Regulation is valid and effective.

The Regulation was adopted by defendant Carleson, as Director of the Department of Social Welfare of the State of California, pursuant to his authority to formulate regulations in aid of administering AFDC. (§ 10553, subds. (b) and (d).) Specifically, the Regulation was enacted in implementation of section 11250, which in pertinent part provides: "Aid, services, or both, shall be granted under the provisions of this chapter, and subject to the regulations of the department, to families with related children under the age of 18 years, except as provided in Section 11253, in need thereof because they have been deprived of parental support or care due to: . . . (b) The divorce, separation or desertion of a parent or parents and resultant *continued absence* of a parent from the home for these or other reasons; . . ." (Italics added.)[2]

The Regulation deals with a definition of the term "continued absence" as used in section 11250. In pertinent part the Regulation provides as follows:

"AFDC| .1 *Definition of 'Continued Absence'*

" 'Continued Absence' exists when the natural parent is physically absent

[2]Section 11250 has been amended effective July 1, 1973, by the deletion of the words "services, or both," after "Aid" in the first paragraph.

from the home and the nature of the absence constitutes dissociation; that is, a substantial severance of marital and family ties which deprives the child of at least one of its natural parents.

"A substantial severance of marital and family ties means that the absence is accompanied by a definite interruption of or marked reduction in marital and family responsibilities compared to previously existing conditions.

" 'Continued absence' does not exist: . . .

".12 When both parents are maintaining a home together but the child lives elsewhere. It is immaterial whether the child lives with a relative or in foster care as a result of placement by the parents, by an agency on behalf of the parents, or by another authoritative agency.

".2 *Circumstances That Meet the Definition of 'Continued Absence'* . . .

".26 Both parents are physically out of the home and their whereabouts are not known. . . ."

Plaintiffs contend that section 11250 clearly provides for aid to be given to a child whose parent or parents have deserted him without regard to whether or not the deserting parents reside together. Defendants, in turn, urge that the Regulation correctly limits "continued absence" to situations where the family structure has suffered severe dissociation and that such a dissociation does not exist when the child's parents are in fact maintaining a home.

■ In determining the proper interpretation of section 11250 we first observe that administrative regulations must conform to the legislative will and that if such regulations violate acts of the Legislature they are void. (*California Welfare Rights Organization* v. *Carleson,* 4 Cal.3d 445, 455 [93 Cal.Rptr. 758, 482 P.2d 670]; *Morris* v. *Williams,* 67 Cal.2d 733, 737 [63 Cal.Rptr. 689, 433 P.2d 697].) Accordingly, in ascertaining the intent articulated in section 11250, we should first turn to the words of the statute to determine the will of the Legislature and to give effect to the statute according to the usual, ordinary import of the language employed in framing it. (*Noroian* v. *Department of Administration,* 11 Cal.App.3d 651, 654-655 [89 Cal.Rptr. 889]; *Kimball* v. *County of Santa Clara,* 24 Cal.App.3d 780, 784 [101 Cal.Rptr. 353].)

■ We advert to the pertinent provisions of section 11250. These provisions provide that aid is to be granted to children who have been

deprived of parental support or care due to the divorce, separation or a desertion of a parent or parents where such divorce, separation or desertion results in the "continued absence of the parent from the home for these or other reasons; . . ." The reference point of the statute is the deprived child. Accordingly, the statute is most fairly construed in terms of *absence from the child's home*. A child is just as effectively deprived of parental support and care when he has been abandoned and excluded from a home which his parents are maintaining together as when he remains in a home with one natural parent where the other natural parent is physically absent from the home by reason of a substantial severance of the marital and family ties.

We observe that section 606(a) of title 42 United States Code, in pertinent part, defines the term "dependent child" as "a needy child (1) who has been deprived of parental support or care by reason of the . . . continued absence from the home . . . and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother . . . in a place of residence maintained by one or more of such relatives as his or their own home, . . ." This statute clearly indicates that the term "home" has reference to the home in which the dependent child is living.

 It is well settled that eligibility under the AFDC program must be measured by federal standards. (*Carleson* v. *Remillard,* 406 U.S. 598, 600 [32 L.Ed.2d 352, 355, 92 S.Ct. 1932, 1934]; *Townsend* v. *Swank,* 404 U.S. 282, 286 [30 L.Ed.2d 448, 452-453, 92 S.Ct. 502]; *King* v. *Smith,* 392 U.S. 309, 333-334 [20 L.Ed.2d 1118, 1134-1135, 88 S.Ct. 2128].) In *Remillard* it was specifically pointed out that under the AFDC program Congress intended to provide programs for the economic security and protection of all children and that it did not arbitrarily intend to leave one class of destitute children entirely without meaningful protection. (*Carleson* v. *Remillard, supra,* 406 U.S. at p. 602 [32 L.Ed.2d at p. 356, 92 S.Ct. at p. 1936]; see *King* v. *Smith, supra,* at p. 330 [20 L.Ed.2d at pp. 1132-1133].)

Considerable stress is placed by defendants on the administrative interpretation of the meaning of section 11250 and section 606(a) of title 42 United States Code, and they urge upon us the rule of interpretation that continuous, consistent application of an administrative interpretation is of great persuasive force in helping a court to determine legislative intent. (See *City of Los Angeles* v. *Rancho Homes, Inc.,* 40 Cal.2d 764, 770-771 [256 P.2d 305]; *Pearson* v. *State Social Welfare Board,* 54 Cal.2d 184, 210 [5 Cal.Rptr. 553, 353 P.2d 33].) In this connection we here note

that the Regulation has been applied continuously over the past few years without comment or change of the statute by the Legislature. The rule urged upon us by defendants must, however, yield to the paramount rule that administrative regulations that violate acts of the Legislature are void. (*California Welfare Rights Organization* v. *Carleson, supra,* 4 Cal. 3d 445, 455; *Morris* v. *Williams, supra,* 67 Cal.2d 733, 737.)

Defendants have submitted for our consideration a letter dated May 25, 1973, from the Regional Commissioner of the Department of Health, Education and Welfare (hereinafter "HEW") stating that in the opinion of HEW "exclusion of children whose parents live together but who themselves live elsewhere is not inconsistent with Federal standard governing continued absence" and that HEW sees no reason "to change HEW's long standing policy of approval of EAS 41-450.12."[3] It should be here noted that on July 21, 1972, the same regional commissioner, in a letter to counsel for plaintiffs stated as follows: ". . . Your question related to eligibility of a child, living with relatives, but whose parents—living together elsewhere, could care for him. There is no question that under Title IV-A Section 406(a) of the Social Security Act, such a child could be considered deprived of parental support or care. *This section speaks of the home of the child and not to the home of the parents.* Therefore Federal matching would be available for otherwise eligible children, living with a specified relative, although the parents are maintaining a home elsewhere and the child could live with them. [¶] Over the years, states have been permitted to adopt policies that denied assistance to such children, . . . As with several other policies and practices, this one is under review in light of the recent U.S. Supreme Court decisions." (Italics added.)[4]

The change in the regional commissioner's interpretation is said in the most recent letter to be the result of a reexamination of the Regulation in light of *Townsend* v. *Swank, supra,* 404 U.S. 282, and other judicial decisions concerning the validity of state eligibility requirements. We see nothing in *Townsend* or in *Remillard,* which cites *Townsend,* supportive of a necessity for the commissioner to change his opinion. *Townsend* held invalid an Illinois statute and regulation which provided that needy dependent children 18 through 20 years attending a college or university did not qualify under the AFDC program as being in conflict with the federal statutory provision and violative of the supremacy clause. *Remil-*

---

[3]This letter, received in augmentation of the record, is from Philip Schafer, as regional commissioner, to David Swoap, Director, State of California Department of Social Welfare.

[4]This letter was an exhibit in the court below.

*lard* held that a California regulation excluding so-called military orphans from benefits under the AFDC program was unauthorized and invalid under the supremacy clause. In *Remillard* the regulation provided that military service did not constitute "continued absence from the home."

The ambivalence in the commissioner's two opinions indicates to us that we can place little reliance on the administrative interpretation insofar as the subject Regulation is concerned. Rather, we are impelled to conclude with the observation in *King* that "It is . . . clear that to the extent HEW has approved any . . . provision which conflicts with § 406(a) of the Social Security Act, 42 U.S.C. § 606(a), such approval is inconsistent with the controlling federal statute." (392 U.S. at p. 333, fn. 34 [20 L.Ed.2d at p. 1134].)

■ We conclude, moreover, that the Regulation, insofar as it draws distinctions of eligibility based solely upon whether or not the parents who have abandoned children reside together, creates a classification which violates the equal protection clause of the Fourteenth Amendment. ■ As observed in *Purdy & Fitzpatrick* v. *State of California,* 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194], "The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." (See *Gray* v. *Whitmore,* 17 Cal.App.3d 1, 21 [94 Cal.Rptr. 904]; *Williams* v. *Field,* 416 F.2d 483, 486; and see *Jefferson* v. *Hackney,* 406 U.S. 535, 545-546 [32 L.Ed.2d 285, 295-296, 92 S.Ct. 1724]; *Dandridge* v. *Williams,* 397 U.S. 471, 484 [25 L.Ed.2d 491, 501, 90 S.Ct. 1153].) Although this concept does not require absolute equality (*Douglas* v. *California,* 372 U.S. 353, 357 [9 L.Ed.2d 811, 814, 83 S.Ct. 814]; *In re Antazo,* 3 Cal.3d 100, 110 [89 Cal.Rptr. 255, 473 P.2d 999]), or that a statute necessarily apply equally to all persons (*Rinaldi* v. *Yeager,* 384 U.S. 305, 309 [16 L.Ed.2d 577, 580, 86 S.Ct. 1497]; *In re Antazo, supra*), a state may not provide for differences that amount to invidious discrimination. (*Douglas* v. *California, supra,* at p. 356 [9 L.Ed.2d at p. 814]; *In re Antazo, supra; Gray* v. *Whitmore, supra,* at pp. 21-22.)

■ This clause "forbids the establishment of laws which arbitrarily and unreasonably create dissimilar classifications of individuals when, looking to the purpose of those laws, such individuals are similarly situated." (*Williams* v. *Field, supra,* 416 F.2d 483, 486; see *Asbury Hospital* v. *Cass County,* 326 U.S. 207, 214 [90 L.Ed. 6, 13, 66 S.Ct. 61]; *Vincent* v. *State of California,* 22 Cal.App.3d 566, 572 [99 Cal.Rptr. 410]; see *Jefferson* v. *Hackney, supra,* 406 U.S. 535, 544-545 [32 L.Ed.2d 285,

294-295, 92 S.Ct. 1724, 1731]; *Dandridge* v. *Williams, supra,* 397 U.S. 471, 483 [25 L.Ed.2d 491, 500-501].)

■ The subject federal enactments and California legislation are designed to provide assistance to children who are without parental structure "away from home." The reference point in the legislation is the deprived child and the home referred to is the child's home. The Regulation, in limiting the purpose of federal and state legislation, has arbitrarily and unreasonably created a dissimilar classification of children who are similarly situated with other children to whom aid has been extended. The children in the present case share with the eligible class the necessary relevant characteristics, i.e., deprivation of parental support and care by reason of the absence of the parents. In sum, the regulation, in the respects here involved, provides for differences that amount to invidious discrimination.

In *Townsend,* the Supreme Court, having found the Illinois statute and regulation invalid under the supremacy clause, did not reach the equal protection issue. (404 U.S. at p. 291 [30 L.Ed.2d at pp. 455-456].) The court noted, however, that the statute and regulation there involved discriminated between the needy children before the court solely upon the basis of the type of school they attended. (404 U.S. at p. 287 [30 L.Ed.2d at p. 453].)

Accordingly, we hold the Regulation to be void and unconstitutional insofar as it provides that "continued absence" does not exist, within the meaning of section 11250, when both parents are maintaining a home together but the child lives elsewhere.

The judgment is reversed with directions to the trial court to grant the peremptory writ of mandate.

Sims, J., and Elkington, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 16, 1973.