[Civ. No. 20926. Third Dist. June 3, 1983.]

JEWEL DENE WATKINS, Plaintiff and Respondent, v.
WILLIS WATKINS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*See *post,* page 655.

COUNSEL

Goldman & Kagon, A. David Kagon and Charles D. Meyer for Defendant and Appellant.

Wohl, Cinnamon & Hagedorn, Alvin R. Wohl, Kenneth O'Brien, Don E. Green and Steven B. Eggleston for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—In this case we hold that where unmarried parties who are living together enter into an implied agreement acknowledged by *Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106], and the parties later marry, the *Marvin* agreement is enforceable after marriage.

### FACTUAL AND PROCEDURAL BACKGROUND

In May or June of 1971, Jewel Dene (Judy) and Willis (Buster) Watkins began living together in a manner akin to that described in *Marvin* v. *Marvin, supra.* The parties were married on March 16, 1977, and separated eight months later. On April 24, 1978, Buster petitioned for a dissolution of that marriage or, in the alternative, a declaration of nullity. On June 26, 1978, Judy filed a separate action for declaratory relief, constructive trust, breach of express contract, breach of implied contract, quantum meruit, fraud, and partner-

ship dissolution. The two actions were consolidated for purposes of trial. Buster filed a motion for judgment on the pleadings contending that Judy's cause of action for implied contract was extinguished as a matter of law by their marriage. The trial court denied the motion and a jury ultimately fixed damages for breach of an implied contract. Buster has appealed, contending, inter alia, that the trial court should have granted his motion for judgment on the pleadings. Buster argues that any implied *Marvin* contract became unenforceable by operation of law when the parties married. We disagree.

## DISCUSSION

We find no suggestion in *Marvin* v. *Marvin, supra,* that an implied contract regarding the property of unmarried persons becomes unenforceable as a matter of law upon their marriage. To the contrary, the policy that underlies *Marvin* compels the conclusion that the premarital implied contract should remain enforceable after marriage.

One of the central concerns that led the court in *Marvin* to recognize an implied contract was the recognition that a contrary rule ". . . would work an unfair distribution of the property accumulated by the couple." (*Marvin* v. *Marvin, supra,* 18 Cal.3d at p. 681.) This concern was particularly appropriate in cases where one partner worked outside the home and the other partner cared for the house and children, because the out-of-home partner usually acquired property in his or her name as otherwise separate property, leaving the homemaker partner without property upon a breakup of the relationship. (See *Marvin, supra,* at pp. 679-680; *In re Marriage of Cary* (1973) 34 Cal.App.3d 345 [109 Cal.Rptr. 862].) The court in *Marvin* also recognized that the homemaker partner, by rendering services, usually made a valuable contribution to the acquisition of property by the out-of-home partner. Thus, *Marvin* quoted with approval the dissenting opinion of Justice Curtis in *Vallera* v. *Vallera* (1943) 21 Cal.2d 681, at pages 686-687 [134 P.2d 761]: " 'Unless it can be argued that a woman's services as cook, housekeeper, and homemaker are valueless, it would seem logical that if, when she contributes money to the purchase of property, her interest will be protected, then when she contributes her services in the home, her interest in property accumulated should be protected.' [Citations.]" (*Marvin, supra,* 18 Cal.3d at p. 679.)

An equitable distribution of property accumulated with the help of the homemaker partner would hardly be achieved by holding the *Marvin* contract automatically unenforceable upon marriage. In the instant case, for example, Judy and Buster lived together for about six years, married, and separated eight months later. Judy was a homemaker who helped raise Buster's children. By Buster's theory, Judy forfeited her property rights obtained by implied contract during the six years of premarital relationship when she and Buster embarked

on their eight months of marital bliss. Buster would have Judy share only in whatever community property was acquired in the eight months between marriage and separation. However, the policy of *Marvin* requires that Judy's earned property rights be protected.

Buster suggests that the rule we adopt will somehow derogate the marital relationship. We draw an opposite conclusion. We think that many unmarried *Marvin* partners are less likely to get married if the homemaker partner faces the prospect of automatically forfeiting his or her *Marvin* rights upon marriage.

Buster next contends that recovery of damages under the *Marvin* agreement is precluded by *Estate of Sonnicksen* (1937) 23 Cal.App.2d 475 [73 P.2d 643]. In *Sonnicksen* a woman entered into a written contract with a man providing that she would maintain a common home for the parties and provide him with care and companionship for the remainder of his life. The man promised to convey certain described real property to the woman at the moment immediately before his death. (*Sonnicksen, supra,* at pp. 476-478.)

The parties were married a year and a half after the execution of this contract; husband died three years after that. As has been its practice for a long time, death arrived unannounced (see Civ. Code, § 3546), and husband was unable to convey the property at the moment preceeding his demise. Wife appealed from an order of the probate court denying her request that the property be conveyed.

On appeal the court affirmed, holding, "When the parties subsequently [married] . . . one of the implied terms of the contract of marriage was that appellant would perform without compensation the services covered by said written agreement." (*Sonnicksen, supra,* at p. 479.)

*Sonnicksen* represents an application of the rule that "a married woman cannot contract with her husband with respect to domestic services which are incidental to [the] marital status, since such contracts are against public policy. [Citations.]" (*Brooks* v. *Brooks* (1941) 48 Cal.App.2d 347, 350; see, 6 Witkin, Summary of Cal. Law (8th ed. 1974) Husband and Wife, § 5, p. 4877.) In both *Sonnicksen* and *Brooks,* the applicable contracts explicitly provided that the woman necessarily had to provide services during the marriage in order to receive the consideration contemplated by the contracts. Thus, in *Sonnicksen,* real property was to be conveyed only if care and companionship were furnished for the remainder of the life of the man, a period necessarily including any marriage. In *Brooks,* the woman, a nurse, agreed to provide nursing and housekeeper services only if the man would marry her and then only if she received money, room, and board during the marriage.

In the instant case, Judy's complaint for implied contract[1] does not allege that she was obligated to perform services during marriage as a part of her implied contract with Buster. Thus, her complaint alleges that "During the course of the period of time that the parties lived together *before their marriage* . . ." the parties undertook certain activities. Among them were that Judy acted at all times as a homemaker, cook, nurse, and confidant to Buster and his children and that Judy took care of Buster when he was ill. The complaint alleges further that, before their marriage, Buster assured Judy that she would be financially compensated and secure and that it would make no difference that they were not legally married. In short, the complaint alleges an implied agreement based on activities, assurances and services rendered prior to marriage, not during marriage.[2] Since the implied agreement, as pleaded, does not require that domestic services be rendered during the marriage for consideration, the rule of *Sonnicksen* and *Brooks* is inapposite.

The motion for judgment on the pleadings was properly denied.

In an unpublished portion of this opinion (see rule 976.1 of the Cal. Rules of Court), we consider and reject other contentions made by Buster.

Puglia, P. J., and Evans, J., concurred.

---

[1]In ruling on a motion for judgment on the pleadings, the court must accept the allegations of plaintiff's complaint as true. (*Marvin* v. *Marvin, supra,* 18 Cal.3d at p. 666.)

[2]Paragraph 6 of the complaint alleged a reaffirmance of the agreement when the parties got married, but only with respect to "previously acquired property." Nothing in the complaint suggests that Judy had to perform services during marriage in order to enforce the agreement.